**Eddie Will SANDERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 12–95–00272–CR.

Court of Appeals of Texas,
Tyler.

Nov. 25, 1997.

Discretionary Review Refused
May 20, 1998.

598

David Cass, Van, for appellant.

Edward J. Marty, Tyler, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

RAMEY, Chief Justice.

On August 26, 1997, this Court issued its original opinion in this case. The Appellant, Eddie Will Sanders, filed a motion for rehearing on September 25, 1997, complaining of, among other things, a misstatement in this Court's opinion concerning a provision in a discovery order issued by the trial court. For the purpose of clarification only, we hereby grant Appellant's motion for rehearing and withdraw the opinion of this Court issued on August 27, 1997 and replace it with the following opinion:

### Opinion on Rehearing

Eddie Will Sanders ("Appellant") appeals from his conviction by a jury of the crime of possession of a controlled substance, in this case 348 grams of crack cocaine. The jury sentenced him to a term of imprisonment of ninety-nine years. Appellant raises three points of error on appeal; we will affirm the judgment of the trial court.

In his first point of error, Appellant alleges that the trial court erred in allowing the state to amend the indictment twice on the day of trial over Appellant's objections. This case has a lengthy and complex procedural history and nearly went to trial on more than one occasion. On May 1, 1995, Appellant's case was called to trial, and prior to jury selection, the State requested an amendment of the indictment to correct the indictment's mistaken reference to a grand jury term that had not yet occurred and to change the stated offense from "possession of a controlled substance with intent to deliver" to "possession of a controlled substance." Appellant objected to both proposed amendments. The trial court granted the State's motions and interlineated the change regarding the grand jury term but did not note the change regarding the offense charged. Appellant then requested and received a ten day continuance; thus, a jury was not selected on that day. The trial court did not set a new trial date, but the case did finally go to trial on July 26, 1995.

■ Article 28.10 of the Code of Criminal Procedure governs the amendment of indictments and provides in part that amendments may be made "at any time before the date the trial on the merits commences" so long as the defendant is allowed a continuance of at least ten days, if he requests one. TEX.CRIM. PROC.CODE art. 28.10(a) (Vernon 1989). Subsection (b) of article 28.10 states that after trial on the merits commences, the indictment may not be amended if the defendant objects. The Court of Criminal Appeals recognized in *Sodipo v. State*, 815 S.W.2d 551, 556 (Tex.Cr.App.1990), that the Code contained a gap that did not provide a rule for an amendment requested *on* the day of trial but *before* trial commences. There, the trial court had refused to grant the defendant a ten-day continuance after he objected to the State's requested amendment of the indictment on the day of trial but before the trial actually commenced. The Texas Court of Criminal Appeals addressed the problem by ruling that the State may not amend the indictment on the day trial on the merits commences even if the amendment is requested before the actual trial begins. *Id.* In a similar case, this court held that trial on the merits had commenced on the day when the jury was sworn although the actual trial did not begin until fourteen days later. *Charles Ray Dixon v. State*, 932 S.W.2d 567, 569–70 (Tex.App.—Tyler 1995, no pet.).

The instant case may be distinguished. Here, the jury was not chosen until July 26, nearly three months after the amendments were made, and, unlike the trial court in *Sodipo*, the trial court here granted Appellant's request for a ten day continuance. Thus, trial on the merits did not commence on May 1, 1995, and the trial court complied with the provisions of the Code by granting the ten-day continuance upon Appellant's objection to the amendment. In these circumstances, the "window of opportunity" warned of in *Sodipo* was not opened. *Sodipo v. State*, 815 S.W.2d at 556, n.3. We hold that the trial court did not violate the requirements of article 28.10(a) and 28.10(b) in granting the State's motion to amend the indictment and Appellant's motion for a continuance on May 1, 1995. Appellant's first point of error is overruled.

■ In his second assignment of error, Appellant contends that the trial court erred in denying his motion to quash the indictment because the grand jury transcript revealed that a person other than an attorney for the State or a grand juror questioned a witness before the grand jury. Art. 20.04 of the Code of Criminal Procedure states that "[n]o person other than the attorney representing the State or a grand juror may question a witness before the grand jury." TEX. CRIM. PROC.CODE art. 20.04 (Vernon Supp. 1997). Here, the grand jury transcript reveals that Danny Green ("Green"), an investigator for the State, asked questions of one of the witnesses.

Both parties admit that there are no published opinions dealing with this issue since the amendment of article 20.04 to its present form. The State argues that case authorities relevant to the prior version of the statute suggest that such questions do not constitute reversible error. *See, e.g., Ex parte Rogers*, 640 S.W.2d 921, 924 (Tex.Cr.App.1982). But the language of the earlier version was not exclusive: it provided that the State's attorney "may examine the witnesses" and did not contain that language of the current version ("no person other than ...") which limits questioning to the State's attorney and a grand jury member. Act of 1965, 59th Leg., ch. 722, 1965 Tex. Gen. Laws 317 (amended 1989).

The questions posed by Green were a technical violation of the statute. The State argues, however, that because the Code of Criminal Procedure does not provide specifically for a means by which to enforce article 24.04, this Court must review the error to determine whether Appellant suffered any harm. The State observes that harm analysis is appropriate unless the record does not provide "any concrete data from which an appellate court can meaningfully gauge or quantify the effect of the error." *Sodipo*, 815 S.W.2d at 554; *Roberts v. State*, 784 S.W.2d 430, 435 (Tex.Cr.App.1990). The Court of Criminal Appeals noted further in *Sodipo* that the federal courts will apply harmless error analysis to a violation of a right of the defendant unless "it is extremely difficult to

know whether [the violation] might have affected the outcome, or the likelihood that [the violation has] influenced the outcome is so strong that it is not worth expending the judicial resources necessary to evaluate the effect of the error in particular cases." *Sodipo*, 815 S.W.2d at 554–55 (citing, among others, *United States v. Cronic*, 466 U.S. 648, 659–60, 104 S.Ct. 2039, 2047–48, 80 L.Ed.2d 657 (1984)).

We agree with the State's assertion that the error complained of here is subject to harm analysis. The questions complained of appear in the record and may be analyzed in relation to the rest of the witness' testimony before the grand jury, thereby allowing this court to "meaningfully gauge or quantify the effect of the error." The grand jury witness in question, Shelie King ("King"), was a passenger in the car owned by Appellant and in which the contraband was discovered, and she was charged as a co-defendant. We quote the questions posed by Green and the responses of King in their entirety:

Grand Juror: Did that indicate to you that they were going to do something illegal in Dallas?

Witness: Yeah. Yeah. Seems that way.

Mr. Green: I mean, did Sanders or Darnell have the reputation in that area? Did you know their reputation in Longview?

Witness: It's not that I knew their reputation. I just, you know, the crowd of people that they'd be with and stuff, you know what I'm saying?

Mr. Green: That's the reason you felt like—do you use crack cocaine?

Witness: No, no, no.

Mr. Green: Do you smoke marijuana?

Witness: No, cigarettes either. Don't drink coffee. The only habit I've got is Coke—Coca Cola Classic, you know what I'm saying?

Mr. Green: Did you mention to Darnell or Eddie how much your Christmas layaways were amounting to or how much you owed?

Witness: Well, yeah, I told them.

Mr. Green: Did they realize that you had about $700.00 that you needed to pay?

Witness: Yes, I told them.

Mr. Green: And they were willing to give you that much money to go to Dallas?

Witness: I don't think they were going to give me that much money. Kind of stingy.

These questions and responses, when viewed in the context of King's entire testimony before the grand jury, are no more than reiterations of earlier exchanges while under examination by grand jurors only, as the following passage from King's grand jury testimony illustrates:

Grand Juror: Okay. Why don't you tell us what happened on December 7th of 1993; how you got involved with Eddie Sanders and Darnell Brice?

Witness: Okay. Let me see. I don't remember exactly what time it was of the day, but I was up on Twelfth Street. And that's why—where I ran into Eddie and Darnell And so they said they were going to Dallas for a pick-up.

Grand Juror: What did that mean to you?

Witness: Well, like I told Danny, in the back of my mind, I kind of knew what it was. And I started to ask and then I said no. Because then, you know, then I really would have known. And so, I was feeling kind of depressed and stuff that day, because I was wondering about how I was going to get all my Christmas layaways out for my kids. And plus, I was supposed to be moving that following weekend and stuff. And they said, well, if I went with them or whatever, that they'd help me get my Christmas layaways out and they'd help me with my deposit on my house.

Grand Juror: Okay. Why did—how did you know what—he meant by a pick-up?

Witness: Just—I guess you call it slang for out on the—street, street words or whatever.

Grand Juror: Okay. What is it about Eddie Sanders and Darnell Brice that made you know what a pick-up meant? I mean, to me, that could mean anything. But how did you know that it meant they were going to pick up drugs? Do you know that Eddie Sanders and

Darnell Brice deal drugs? Did you know they had dealt drugs in the past?

Witness: No, not really, I didn't know it.

Grand Juror: Okay. How did you know that that meant they were going to pick up drugs?

Witness: That's a good question. I guess it was just a feeling I had.

Grand Juror: Okay. So, you didn't know that they dealt drugs in the past?

Witness: Huh-uh. No. I'm sorry.

Grand Juror: Okay. But when you agreed to do this, you knew that that's what they were going to pick up?

Witness: (Witness nods head).

Grand Juror: Yes or no?

Witness: Yes. I'm sorry.

The questions asked by Green in the passage first quoted elicited information from King that was either redundant or irrelevant. Every point in Green's questions had already been asked of King by a grand jury member except for the questions regarding whether she smoked or used drugs. The questions regarding her personal habits, apart from resulting in emphatic denial, bore no relation to Appellant's case. Appellant complains of one other statement made by Green, but in that instance, he merely interjected when the witness responded to a grand juror's question by asking for the names of the streets on which a store was located. Green did not ask the question himself. We conclude that Green's interjections during the grand jury proceeding, though technically erroneous, made no contribution to the conviction or punishment and were therefore harmless. TEX.R.APP. P. 81(b)(2). Consequently, we hold that the trial court did not err in denying Appellant's motion to quash. Appellant's second point of error is overruled.

 In his third point of error, Appellant claims that the trial court erred in denying his motion to dismiss the indictment for failure to afford Appellant his right to speedy trial, as guaranteed by the Sixth Amendment of the United States Constitution, Article 1, Section 10 of the Texas Constitution, and article 1.05 of the Texas Code of Criminal Procedure. The courts of Texas review speedy trial claims under both federal and state law according to the same standard of review. *Hull v. State*, 699 S.W.2d 220, 221 (Tex.Cr.App.1985). In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court developed a four-part test for determining whether an appellant's right to a speedy trial was violated. The courts should review the record in light of (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant resulting from the delay. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2191; *Emery v. State*, 881 S.W.2d 702, 708 (Tex.Cr.App.1994), *cert. denied*, 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995). Recently, the appellate courts have begun to review such appeals *de novo*. *See Clarke v. State*, 928 S.W.2d 709, 712–713 (Tex.App.—Fort Worth 1996, pet. ref'd); and *Holmes v. State*, 938 S.W.2d 488, 492 (Tex. App.—Texarkana 1996, no pet.). We agree and will perform a *de novo* review of the evidence of delay in this case according to the standard set out in *Barker.*[1]

Appellant was arrested on December 7, 1993 and indicted on December 28th. On April 25, 1994, the State dismissed the original indictment and released Appellant from jail. Appellant was re-indicted on May 19, 1994 and turned himself in to jail authorities on July 20, 1994. In order to clarify these and other relevant facts and aid our analysis of them under the four part *Barker* test, we will set out a chronology of the pertinent events, as gleaned from the briefs and the record:

12–07–93 Appellant arrested.

12–28–93 Indictment (cause # 4–93–1404).

1. In fact, in an opinion which has not been released at the time of this opinion, the Texas Court of Criminal Appeals has confirmed that the appellate courts should conduct a de novo review of an appellant's speedy trial claim; this is so because the balancing test as a whole presents a purely legal question even though review of the individual *Barker* factors involves fact determinations along with legal conclusions. *Johnson v. State*, 954 S.W.2d 770, 771–72 (Tex.Cr.App. 1997).

| | |
|---|---|
| 04–25–94 | Original indictment dismissed; Appellant released from jail. |
| 05–19–94 | Appellant re-indicted (cause # 4–94–145). |
| 07–20–94 | Appellant turned himself in. |
| 09–01–94 | Appellant's first motion for continuance filed, stating continuance is necessary because he had not received discovery from State, anticipated needing time to prepare and file motions, and had been busy with other trials. |
| 09–06–94 | Trial setting on second indictment. Continued on motion of Appellant. Trial reset for 10–24–94. |
| 10–20–94 | Appellant filed motion for discovery and for continuance. Court granted motions and ordered State to provide discovery by 10–28–94 and reset trial for 11–28–94.. |
| 11–07–94 | Court ordered that State respond to discovery requests and set compliance hearing for 11–11–94. |
| 11–14–94 | Discovery compliance hearing. Court ordered State to comply by 11–16–94. |
| 11–16–94 | State responded to the court's discovery order. |
| 11–23–94 | Appellant moved for another continuance alleging the State did not provide responses to two items in the court's order of 11–14–94. |
| 11–28–94 | Court ordered State to provide new discovery responses by 12–12–94; Court continued trial date until 1–23–95. |
| 01–23–95 | State requested continuance due to unavailability of a witness. Court reset trial for 02–02–95. |
| 01–26–95 | Appellant indicted under new cause number (# 4–95–60). Cause # 4–94–145 was dismissed on 2-2–95. |
| 02–06–05 | Trial court noted dismissal of cause # 4–94–145 and would not hear Appellant's motion for personal recognizance bond because the new case was not before it. |
| 03–27–95 | Court set cause # 4–95–60 for trial on 5–1–95. |
| 04–21–95 | Appellant filed first motion for speedy trial and motion to reduce bond. |
| 05–01–95 | Trial date continued because of amendment of indictment. Appellant also moved for dismissal on speedy trial grounds. Court said hearing on speedy trial motion could be held prior to jury selection. No hearing held. |
| 05–11–95 | Hearing on Appellant's motion to reduce bond |
| 05–16–95 | Alleged date of hearing on motion for dismissal for speedy trial violation. (There is no record that any such hearing was held.) |
| 07–05–95 | Appellant filed motion for continuance because of surgery. Court set trial date of 7–17–95. |
| 07–17–95 | Appellant renewed demand for speedy trial. |
| 07–26–95 | Trial of case. |

*The Length of Delay:*

■ Though there is no particular period of time which constitutes a per se violation of the right to a speedy trial, "[t]he length of the delay is to some extent a triggering mechanism, so that a speedy trial claim will not be heard until passage of a period of time that is, prima facie, unreasonable under the existing circumstances." *Knox v. State,* 934 S.W.2d 678, 681 (Tex.Cr.App.1996). In *Knox,* the Court of Criminal Appeals noted that courts often hold that a delay of eight months or more is "presumptively unreasonable and triggers speedy trial analysis" and therefore assumed for the purposes of the case before it that a ten-month delay was "prima facie unreasonable." *Id.; see also Harris v. State,* 827 S.W.2d 949, 956 (Tex.Cr. App.1992), *cert. denied,* 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992).

In the instant case, nineteen months elapsed from the time of Appellant's arrest on December 7, 1993 to the day trial began on July 26, 1995. Appellant was incarcerated for all but approximately three months of that time. Such a delay is not a per se violation of Appellant's right to a speedy trial, but we conclude that it was significant enough to require scrutiny under the four-part test of *Barker*.

*The Reason for the Delay:*

The State bears the burden to establish a reason for the delay. *Phillips v. State*, 650 S.W.2d 396, 400 (Tex.Cr.App.1983); *Turner v. State*, 545 S.W.2d 133, 137–138 (Tex.Cr.App.1976). According to Appellant, the State bore the blame for all but one of the delays in this case; he claims that the State either sought the delay itself, as in one instance when a State's witness was unavailable, or forced Appellant to request a continuance because of the State's failure to comply with discovery requests or late amendment or dismissal of the indictment. The one exception admitted by Appellant was an occasion when he requested a continuance (of the July 5, 1995 trial setting) because he was to undergo surgery.

The record discloses that the State does indeed bear the greater responsibility for all but one of the other continuances requested by Appellant. Appellant requested the September 6, 1994 continuance on September 1st not only because he had not received discovery from the State, but also because his counsel had been involved in trials that prevented him from devoting time to Appellant's case and because he anticipated needing more time to prepare and file various motions. That delay, therefore, cannot be blamed entirely on the State.

Conversely, the continuances requested by Appellant in October and November of 1994 appear to have been prompted by the State's inaction in response to discovery requested by Appellant and ordered by the court. Appellant filed another motion for continuance on October 20, 1994 and asked that the court order the State to comply with his discovery requests by October 28th. When the State failed to respond to the court's order, the trial court issued a second order and set a compliance hearing for November 11th. On November 14th, the court held the compliance hearing and ordered the State to respond to the discovery requests by November 16th. Finally, on November 16th, the State filed a one-page response to Appellant's request.

On November 23, 1994, Appellant again requested a continuance, alleging that the State had not completely complied with the court's earlier discovery order. The record suggests that Appellant is correct in blaming the State for this delay. The first discovery item mentioned in the trial court's order of November 7th included a directive compelling the State to provide the criminal histories of Appellant's accomplices, and the State's responses of November 16th did not include any reference to that information. Because one of the accomplices, Shelie A. King, was to testify against Appellant as a witness for the State, that information could have proved vital to his defense. It appears, therefore, that the State bears the blame for the continuances requested by Appellant in October and November of 1994.

Also, the delay of approximately four months beginning in January of 1995 appears to have been occasioned by the State's reindictment of Appellant and its dismissal of the previous indictment. Furthermore, Appellant blames the State for the continuance he requested on May 1, 1995 because of the State's late amendment of the new indictment. As explained in our discussion of Appellant's first point of error, the State requested amendment of the indictment on the day the case was set for trial, and Appellant then requested and received a ten day continuance.

The issue of whether the trial court was correct in allowing the amendment of the indictment, however, is not determinative of this point of error. We must apportion blame for the resulting delay of the trial date between the State and Appellant and factor it into the our analysis under *Barker*. It is conceivable that Appellant required the continuance to prepare for trial in light of the trial court's granting of the State's motion to

amend the crime alleged in the indictment to delete the allegation of "... with intent to deliver," a change which was not recorded on the indictment itself. Therefore, we are inclined to conclude that responsibility for the continuance requested by Appellant on May 1, 1995 lies primarily with the State. Because the State appears to be at fault for more of the delays in this case, we hold that this factor of the *Barker* test weighs in favor of the Appellant's position.

*The Defendant's Assertion of the Right:*

Appellant claims that during the months leading up to trial, he made several demands for a speedy trial, both orally and by motion to the court. The record indicates, however, that he did not file his first such motion until April 21, 1995. That was only three months prior to the ultimate trial date, which might have occurred three weeks earlier than it did had Appellant not required a delay to recover from his surgery. On May 1st, a trial setting which the trial court had made before Appellant filed his motion on April 21st, Appellant moved to dismiss on speedy trial grounds. The trial court denied that motion and continued the case at the request of Appellant, as mentioned above.

Appellant did not assert his right to a speedy trial until the latter stages of the period he complains of here. Although a defendant's failure to assert a speedy trial claim during the earlier periods leading up to trial does not waive the right to a speedy trial, the failure to assert the right in a more timely fashion does not favor the defendant's position on the speedy trial issue. See *Holmes v. State*, 938 S.W.2d at 491 ("assertion of right" element of speedy trial analysis weighed against appellant where appellant waited until three months prior to the ultimate trial date to move for speedy trial.) (citing *Barker v. Wingo*, 407 U.S. at 531–32, 92 S.Ct. at 2192–93; and *Harris v. State*, 827 S.W.2d at 957).

Another indication that Appellant was not assertive in seeking a speedy trial was his failure to oppose the State's motion for continuance at the January 23, 1995 trial appearance. Appellant's counsel could have opposed the State's motion for continuance, and on favorable ruling, the case would have proceeded to trial without one of the State's witnesses. In light of this potentially advantageous position, Appellant's agreement to the State's continuance and failure to push the issue of a speedy trial at that juncture suggests he was not seriously opposed to further trial delay at that point.

Finally, to the extent that Appellant claims that the trial court should have dismissed the case on speedy trial grounds rather than quickly proceed with the trial, his argument is weakened. The Texas Court of Criminal Appeals has held that "a defendant's motivation in asking for dismissal rather than a prompt trial is clearly relevant, and may sometimes attenuate the strength of his claim." *Phillips v. State*, 650 S.W.2d 396, 401 (Tex.Cr.App.1983), cited in *Oliver v. State*, 731 S.W.2d 149, 159 (Tex.App.—Fort Worth 1987, pet. ref'd). At the May 1st hearing, Appellant moved that the trial court dismiss the case against him because his right to a speedy trial had been violated; this request for a dismissal was made only nine days after the filing of his first motion for a speedy trial and would have been premature. In light of these considerations, we hold that this factor of the *Barker* test favors the State's position.

*Prejudice to the Defendant:*

The right to a speedy trial is designed to protect the following interests of a defendant, and prejudice may exist when they are violated: (1) the prevention of oppressive pretrial incarceration, (2) the minimization of anxiety and concern on the part of the accused, and (3) the limitation of the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. The Appellant bears the initial burden to show prejudice as a result of the delay, but if he makes a showing of *some* prejudice, the burden shifts to the State to demonstrate otherwise. *Courtney v. State*, 472 S.W.2d 151, 154 (Tex. Cr.App.1971).

Appellant argues that he suffered oppressive pretrial incarceration because he was jailed on one indictment, released for a time when that indictment was dismissed, and had to turn himself in for another lengthy period of incarceration when another indictment was

issued. Furthermore, he had to endure his surgery while in jail. Also, Appellant claims that had he been released on a personal recognizance bond as he had requested, he would have been able to take a more active part in investigating his case and preparing for trial.

These allegations call for speculation on the part of this Court because there is no evidence in the record to support them. Appellant alleges that a hearing on his motion for speedy trial was held on May 16, 1995, but no statement of facts for that hearing appears in the record. He filed an affidavit of the court reporter for the 114th District Court regarding the hearing; however, in that affidavit, the reporter states that he "checked his daily agenda and his notes from May 16, 1995, and can find no record of there being a hearing on this case on that date." Therefore, Appellant has not established prejudice to any of the three interests cited in *Barker*.

In some cases, the delay of trial may be so excessive as to be presumptively prejudicial, but we hold that the delay attributable to the State in the instant case was not so long that it raised such a presumption. *See Doggett v. United States*, 505 U.S. 647, 654–57, 112 S.Ct. 2686, 2692–93, 120 L.Ed.2d 520, 528–31 (1992) (delay of eight and one-half years was presumptively prejudicial). Even in the case of presumptive prejudice, however, the length of the delay alone will not establish a right to dismissal, but the prejudice from the delay becomes more significant to the overall constitutional analysis as the delay increases in length. *Id.* As for any possible impairment to his defense, the fact that Appellant did not complain of the unavailability of any witness or evidence suggests that the delay did not result in such impairment. Furthermore, considering the severity of the charge against him, a certain amount of anxiety while awaiting trial is to be expected. We conclude that absent any other evidence, Appellant has not shown any undue anxiety and concern caused by the delay. We hold that Appellant has not established any prejudice to his rights that goes beyond that which is normally the result of felony indictment and incarceration and has not shifted the burden to the State to disprove such prejudice.

*Conclusion:*

In light of *Barker*, we hold that, on balance, the factors considered above do not weigh in favor of Appellant's assertion of a violation of his constitutional right to a speedy trial. Though the State appears to have caused a significant delay in the trial, Appellant failed to assert his right to a speedy trial until most of the nineteen-month delay had passed. Neither did he establish any prejudice resulting from that delay. As for the remaining *Barker* factor, we do not consider the length of the delay here to be so great as to push the balance in Appellant's favor, especially in view of the seriousness of the crime charged and the severity of the punishment assessed. Accordingly, we overrule Appellant's third point of error.

Having overruled all of Appellant's assignments of error, we affirm the judgment of the trial court.