**Melvin Charles PETTIGREW, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 12–97–00210–CR.

Court of Appeals of Texas, Tyler.

April 29, 1999.

Curtis Ellis, Tyler, for appellant.

Edward J. Marty, Tyler, for appellee.

Panel consisted of RAMEY, Jr., C.J., HADDEN, J., and WORTHEN, J.

JIM WORTHEN, Justice.

Appellant Melvin Charles Pettigrew, Jr. appeals his conviction for the offense of murder. A jury found Appellant guilty of the charged offense and assessed his punishment at 70 years' confinement in the Texas Department of Criminal Justice—Institutional Division. On appeal, Appellant raises six issues regarding the sufficiency of the evidence to support his conviction and grand jury procedure. We will affirm.

### FACTUAL BACKGROUND

On the night of September 2, 1996, a back-to-college party was held at the Activity Center on West Erwin in Tyler. Earlier in the evening, a confrontation began between two local gangs. As the party was ending, a gang from Chapel Hill took a position in their vehicles against the west fence on the Center's parking lot. Outside the Center, Carlos Roberts was talking to Tia Brown and Thomas Murphy. When Roberts noticed a red Camaro and another vehicle pull into the parking lot from Erwin, he told Brown and Murphy to leave because something was about to happen. At that moment, shots erupted in the parking lot. The evidence reflects that Appellant's brother, Marvin Pettigrew, was in the Camaro along with other gang members. Marvin fired the first shot toward the Chapel Hill gang. Appellant was in the second vehicle with a shotgun and fired the second shot toward the gang, who returned fire toward the direction of Erwin Street.

As Tia Brown and Thomas Murphy were driving out of the parking lot going eastbound on Erwin, a shot fired from the Chapel Hill gang, aimed at the Pettigrew gang, struck Thomas Murphy in the head. He died as a result of the gunshot wound. Although the Camaro was struck many times, only one member of the Pettigrew gang was injured. No one from the Chapel Hill gang was shot, even though the parking lot was covered with shell casings. Thomas Murphy, an innocent bystander, was the only fatality of this gang confrontation.

### SUFFICIENCY OF THE EVIDENCE

The indictment contained two paragraphs alleging that Appellant did intentionally cause the death of an individual, Thomas Murphy, by shooting him with a firearm and further that he did intend to cause serious bodily injury by committing an act clearly dangerous to human life, to wit: shooting a firearm at a group of individuals that caused the death of Thomas Murphy.

In points one through four, Appellant challenges the legal and factual sufficiency of the evidence. Regarding the legal and factual sufficiency issue as to both paragraphs or theories of responsibility, Appellant argues that no rational trier of fact could have found each and every material element of the indictment beyond a reasonable doubt because the deceased was almost directly behind Appellant's line of fire and was in fact shot by another individual.

The State argues that Appellant was tried under the theory of "transferred intent" which is codified in Section 6.04(b)(2) of the Texas Penal Code. It states that a person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different person was injured, harmed, or otherwise affected.

## STANDARD OF REVIEW

When an appellant asserts that the evidence is both legally and factually insufficient, an appellate court must first determine whether evidence adduced at trial was legally sufficient to support the jury's verdict. *Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Cr.App.1996). The standard for reviewing the legal sufficiency of the evidence is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See also Geesa v. State,* 820 S.W.2d 154, 157 (Tex. Cr.App.1991); *Richardson v. State,* 879 S.W.2d 874, 879 (Tex.Cr.App.1993), *cert. denied,* 513 U.S. 1085, 115 S.Ct. 741, 130 L.Ed.2d 643 (1995). An appellate court should uphold the jury's verdict "unless it is found to be irrational or unsupported by more than a 'mere modicum' of evidence." *Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Cr.App.1988). All conflicts in the evidence should be resolved in favor of the verdict, and every reasonable inference indulged. *Sneed v. State,* 803 S.W.2d 833, 837 (Tex. App.—Dallas 1991, pet. ref'd); *see also Turro v. State,* 867 S.W.2d 43, 47 (Tex.Cr. App.1993). The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given the testimony of each witness. *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Cr.App. 1981). "The jury may reject any or all of any witness' testimony." *White v. State,* 890 S.W.2d 131, 134 (Tex.App.—Texarkana 1994, pet. ref'd).

Once an appellate court has determined that the evidence is legally sufficient to support the verdict, the court must then proceed to review the factual sufficiency of the evidence. *Clewis,* 922 S.W.2d at 133. In conducting a factual sufficiency review, the appellate court must view all of the evidence impartially and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 135; *Bigby v. State,* 892 S.W.2d 864, 875 (Tex. Cr.App.1994), *cert. denied,* 515 U.S. 1162, 115 S.Ct. 2617, 132 L.Ed.2d 860 (1995). This court, however, must not substitute its judgment for that of the jury. It is not the role of this court to interfere with the jury in resolving conflicts in the evidence or determining the weight and credibility to be accorded varying witnesses' testimony. *Van Zandt v. State,* 932 S.W.2d 88, 96 (Tex.App.—El Paso 1996, pet. ref'd).

## LEGAL SUFFICIENCY

■ Appellant was charged with the murder of Thomas Murphy. In regard to the first theory alleged, Appellant argues that there is no evidence that he shot Murphy or that he was responsible under the law of parties by soliciting, encouraging, or aiding in the death of Murphy. In regard to the second theory alleged, the thrust of Appellant's argument is that there is no evidence linking Appellant to shooting a shotgun toward the gang from Chapel Hill except the testimony of Ross Hudson. Hudson was the driver of the vehicle from which Appellant fired. He argues that Hudson is an accomplice whose testimony is uncorroborated. The record reflects Murphy was shot in the head and killed by a bullet from a .38 caliber hand gun which was fired by Donnie Warren, a member of the Chapel Hill gang.

The State contends that the evidence is legally sufficient on either theory alleged in the indictment under the theory of "transferred intent," which is codified in Section 6.04(b)(2) of the Texas Penal Code. The cases of *Dowden v. State,* 758 S.W.2d 264, 272–73 (Tex.Cr.App.1988) and *Blansett v. State,* 556 S.W.2d 322, 325–26 (Tex. Cr.App.1977) address this issue. Dowden was convicted of capital murder even though he did not shoot the deceased. He and two others went to a police station to rescue a fellow robber. They burst into the police station with guns drawn. A gunfight ensued during which a police offi-

cer was killed by the fire from other officers. The Court of Criminal Appeals held that Dowden's actions were voluntary and as such were intentional and knowing. By acting intentionally, Dowden showed that he was aware that initiating a shootout in a police station could result in the death of one of the officers on duty. *Dowden,* 758 S.W.2d at 272–73; *Blansett,* 556 S.W.2d at 325–26.

Applying the holding in *Dowden* to the facts of the instant case, we reach the same conclusion. Appellant voluntarily entered the parking lot. He and his brother initiated the gun battle with the Chapel Hill gang. By intentionally discharging a firearm toward a group of people, Appellant showed he was aware that someone could be killed or that serious bodily injury could result from his committing an act clearly dangerous to human life. The driver of the vehicle in which Appellant was riding, Ross Hudson, testified that Appellant fired a shotgun toward the Chapel Hill gang. Hudson was not tried as a party to this murder and was not an accomplice as a matter of law. Murphy was shot and killed by the return fire. Under the theory of "transferred intent," we hold there is no distinction between an innocent bystander being killed by return fire and a police officer being killed by friendly fire during a shootout initiated by outlaws. Viewed in the light most favorable to the verdict, the evidence demonstrates that the State proved every element of the charged offense and that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

### FACTUAL SUFFICIENCY

We next view the evidence impartially to determine if that evidence was factually sufficient to support the verdict. In addition to the same arguments previously made, Appellant asserts that there were witnesses who did not see Appellant with a gun or fire a gun toward the Chapel hill gang before they began firing. He argues that the overwhelming weight of the evidence was contrary to the verdict. We do not agree. The members of the jury heard all of the evidence. They were the exclusive fact finders who judged the credibility of the witnesses and the weight to be given their testimony. We will not interfere with the jury's resolution of the testimony or of conflicting evidence unless their verdict was in fact so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Bigby,* 892 S.W.2d at 875. Appellant has not shown how the verdict was contrary to the great weight of the credible evidence as to be clearly wrong and unjust. Appellant's points of error one, two, three, and four are overruled.

### GRAND JURY PROCEDURE

Appellant's fifth point of error contends that the trial court erred when it denied his motion to dismiss the indictment because the grand jury transcript revealed that persons other than an attorney for the State or a grand juror questioned a witness before the grand jury. The record reflects that four grand jury witnesses were questioned by three Tyler police officers. Article 20.04 of the Texas Code of Criminal Procedure provides:

> The attorney representing the State may examine the witnesses before the grand jury and shall advise as to the proper mode of interrogating them. No person other than the attorney representing the State or a grand juror may question a witness before the grand jury. No person may address the grand jury about a matter before the grand jury other than the attorney representing the State, a witness, or the accused or suspected person or the attorney representing the accused or suspected person if approved by the attorney representing the State.

TEX.CODE CRIM. PROC. ANN. art. 20.04 (Vernon 1996).

We addressed this issue in *Sanders v. State,* 978 S.W.2d 597 (Tex.App.—Tyler

1997, pet. ref'd). We held that a harm analysis was appropriate since the error was a technical violation of the statute and since the legislature did not specifically provide a means to enforce the requirements of article 20.04. *Sanders,* 978 S.W.2d at 601. Because the questioning by the officer was irrelevant and redundant, we held that they did not contribute to Sander's conviction or punishment and was therefore harmless. Since our decision in *Sanders,* however, the Supreme Court has promulgated a new set of Rules of Appellate Procedure. Rule 44.2(a) of the Texas Rules of Appellate Procedure has replaced the old rule 81(b)(2) and has limited our review to constitutional errors that are subject to harmless error review. Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. TEX.R.APP. P. 44.2(b).

In the instant case, the alleged error, if any, falls under the "any other error ..." category of Rule 44.2(b). The statute dictates that no one, other than the State's attorney or a grand juror, is to question a witness. The record reflects that officers of the Tyler Police Department were actively involved in questioning witnesses before the grand jury. The transcript of the grand jury proceedings indicates that contrary to the State's contention, the officers did more than simply provide assistance. The error, however, is not constitutional in nature; therefore, we cannot do a harm analysis of the error. Appellant does not complain of any specific questions asked by any particular officer, nor does he show that any of his substantial rights were affected. We must, then, disregard the error. Appellant's fifth issue is overruled.

Appellant, in his sixth point of error, contends that the trial court erred when it denied his motion to compel endorsement of the grand jury witnesses' names to be listed on the back of the indictment. The names of the witnesses that testified before the grand jury were not endorsed on the indictment as directed by article 20.20 of the Texas Code of Criminal Procedure. Appellant moved to compel the endorsement, and the trial court denied the motion. The trial court did, however, order that the names of the grand jury witnesses be provided to Appellant. The language of article 20.20 has been held to be directory and not mandatory. *Bruns v. State,* 924 S.W.2d 176, 179 (Tex.App.—San Antonio 1996, no pet.). In any event, the trial court furnished the names to Appellant; therefore, no harm is shown. Appellant's final issue is overruled.

The judgment of the trial court is *affirmed.*