# NO. 12-07-00263-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

*DELANGO CORNELIOUS GRIFFIN,*      §      *APPEAL FROM THE*
*APPELLANT*

*V.*      §      *COUNTY COURT AT LAW NO. 2 OF*

*THE STATE OF TEXAS,*
*APPELLEE*      §      *SMITH COUNTY, TEXAS*

## *MEMORANDUM OPINION*

Delango Cornelious Griffin appeals the trial court's denial of his motion to set aside the information charging him with driving while intoxicated. In one issue, Appellant argues that the trial court reversibly erred by failing to grant his motion. We affirm.

### BACKGROUND

On January 14, 2005, while on parole from a life sentence for a previous conviction for burglary of a habitation, Appellant committed the offense of driving while intoxicated, resulting in his arrest. On April 1, 2005, the Smith County District Attorney formally charged Appellant with this offense by information. On July 7, 2005, in matters not before the trial court in question, Appellant's parole was revoked and he was returned to incarceration at a state prison.

Appellant's driving while intoxicated case was brought to trial on June 20, 2007. After jury selection, the trial court entertained a motion filed by Appellant to set aside the information. The trial court denied the motion. Appellant subsequently waived his right to a jury trial and pleaded guilty to the offense. The trial court found Appellant guilty and assessed his punishment at 180 days of confinement. This appeal followed.

### SPEEDY TRIAL

In his sole issue, Appellant argues that the trial court reversibly erred by failing to grant his motion to set aside the information. At the hearing on the motion, Appellant asserted that the trial court was required to grant the motion because Appellant's right to a speedy trial, as provided by the United States and Texas constitutions, had been violated. Specifically, Appellant relied on the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Texas Constitution. Appellant reasserts this argument on appeal.

**Standard of Review**

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. This right is applicable to state criminal prosecutions through the Fourteenth Amendment to the United States Constitution. *See Klopfer v. North Carolina*, 386 U.S. 213, 222-23, 87 S. Ct. 988, 993, 18 L. Ed. 2d 1 (1967). Likewise, Article I, Section 10 of the Texas Constitution guarantees that "[i]n all criminal prosecutions[,] the accused shall have a speedy public trial." TEX. CONST. art. I, § 10.

The essential ingredient of the Sixth Amendment's speedy trial guarantee is "orderly expedition and not mere speed." *United States v. Marion*, 404 U.S. 307, 313, 92 S. Ct. 455, 459, 30 L. Ed. 2d 468 (1971). Since 1972, United States Supreme Court precedent has required courts to analyze federal constitutional speedy trial claims "on an ad hoc basis" by weighing and then balancing four factors: (1) length of the delay, (2) reason for the delay, (3) assertion of the right, and (4) prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192, 33 L. Ed. 2d 101 (1972). This balancing test requires weighing case by case "the conduct of both the prosecution and the defendant." *Id.* No single factor is a "necessary or sufficient condition to the finding" of a speedy trial violation. *Id.*, 407 U.S. at 533, 92 S. Ct. at 2193. The related factors "must be considered together with such other circumstances as may be relevant." *Id.* We interpret the language of Article I, Section 10 of the Texas Constitution as providing the same speedy trial guarantee as that of the Sixth Amendment. *Hull v. State*, 699 S.W.2d 220, 221 (Tex. Crim. App. 1985). Therefore, while the Texas Constitution provides an independent speedy trial guarantee, issues are analyzed using the same standard of review applied to federal speedy trial claims. *Sanders v. State*, 978 S.W.2d 597, 601 (Tex. App.–Tyler 1997, pet. ref'd).

In reviewing the trial court's decision on a speedy trial claim, we apply a bifurcated standard

2

of review.  *See **State v. Munoz***, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999).  We review the factual issues under an abuse of discretion standard and review the legal issues de novo.  ***Id.***

**Discussion**

According to Appellant, the trial court erred by failing to grant his request that the information be set aside for failure to afford him the right to a speedy trial.  To resolve the issue, we conduct the four factor ***Barker*** analysis.

      *Length of Delay*

According to the United States Supreme Court, "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." ***Barker***, 407 U.S. at 530, 92 S. Ct. at 2192.  The term "presumptively prejudicial," as used here, "does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger [further review]." ***Doggett v. United States***, 505 U.S. 647, 652 n.1, 112 S. Ct. 2686, 2691 n.1, 120 L. Ed. 2d 520 (1992).  The period of delay "is measured from the time the defendant is arrested or formally accused." ***Shaw v. State***, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003).

Appellant states in his brief that,

> [i]n the instant case, the delay was more than two years [between] the arrest of [Appellant] [on January 14, 2005] and the case being called for trial for the first time [on April 11, 2007].  This is presumptively unreasonable under the cases cited above and must be weighed in [Appellant's] favor under the ***Barker*** analysis.[1]

The State concedes that we "may find that [the] period of time is presumptively prejudicial." Therefore, we will assume, without deciding, that the claimed delay was presumptively prejudicial. *See **Harris v. State***, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992) (also making such an assumption). Accordingly, we must determine what weight, if any, should be assigned to the delay factor and then proceed to the remaining factors.  *See **Barker***, 407 U.S. at 530, 92 S. Ct. at 2192.

The delay complained of was approximately two years and three months.  This delay is not a short period of time.  However, when considering the length of delay only, this delay is not as long as the delay in other cases in which the courts, after analyzing all the factors, found no violation of

---

[1] Appellant addresses only this period of time in his brief.  Therefore, we have not considered others such as the period beginning with Appellant's first trial setting , during which Appellant filed a motion for continuance.

3

the speedy trial requirement.  *See, e.g., Barker*, 407 U.S. at 533-36, 92 S. Ct. at 2193-95 (five years); *Dragoo v. State*, 96 S.W.3d 308, 316 (Tex. Crim. App. 2003) (three and one-half years); *Shaw*, 117 S.W.3d at 891 (three years).

### *Reason for Delay*

A "deliberate attempt to delay the trial" should be weighed heavily against the government. *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192.  A "more neutral reason such as negligence or overcrowded courts should be weighed [against the government] less heavily."  *Id.*  A valid reason for the delay should not be weighed against the government at all.  *Id.*  And delay that is attributable in whole or in part to the defendant may even constitute a waiver of a speedy trial claim.  *Id.*, 407 U.S. at 528-30, 92 S. Ct. at 2191-92.

In discussing the State's argument and presentation of evidence at the hearing, Appellant states in his brief as follows:

> . . . No good reason for the delay was presented by the State in this case.  Appellant testified that he had notified not only the [trial court,] but the Smith County Criminal District Attorney's Office to inform them of his location and to seek return to Smith County to face the charges against him. Further, Appellant filed a Motion for Speedy Trial more than one year prior to his return, which placed the State on notice of his desire to be brought before the [trial court.]  In response to Appellant's motion, the State made no effort to secure his return.  Further, the State gave no explanation for their failure to act.

Indeed, the record from the speedy trial hearing reflects that the failure to more promptly transport Appellant for trial from prison to Smith County was not explained by the State.  The burden of excusing delay rests with the State, and, in light of the case before us, we would ordinarily presume that no valid reason existed for the complained of delay.  *See Turner v. State*, 545 S.W.2d 133, 137-38 (Tex. Crim. App. 1976).  Thus, this factor would usually weigh against the State. However, absent evidence of intent, we will not weigh the reason for delay factor as heavily as we would if there were evidence of intentional conduct on the State's part.  *See Barker*, 407 U.S. at 531, 92 S. Ct. at 2192.

### *Assertion of Right*

Although a defendant's failure to assert his speedy trial right does not always amount to a waiver of that right, "failure to assert the right . . . make[s] it difficult for a defendant to prove he was denied a speedy trial."  *Dragoo*, 96 S.W.3d at 314.  This is so because a defendant's lack of a timely

demand for a speedy trial indicates strongly that he did not really want a speedy trial, and that he was not prejudiced by the lack of one. *Id.* Furthermore, the longer the delay becomes, the more likely a defendant who wanted a speedy trial would be to take some action to obtain it. *Id.* Thus, inaction weighs more heavily against a violation the longer the delay becomes. *Id.*

"In the instant case, the delay [complained of] was more than two years [between] the arrest of [Appellant] [on January 14, 2005] and the case being called for trial for the first time [on April 11, 2007]." According to Appellant, "[he] was not represented by counsel until April 11, 2007." Appellant's brief indicates that Appellant first asserted his right to a speedy trial in August 2005, by way of a written letter addressed to the trial court. Therefore, accepting his version of the events, Appellant allowed approximately seven months to elapse before initially asserting his right. The record reflects that, following this alleged first assertion of his right, Appellant continued to assert this right throughout the remainder of the complained of delay, specifically asserting this right to the trial court in writing on three occasions.

### *Prejudice*

"Prejudice . . . should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193. The United States Supreme Court has identified three such interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* Of these three interests, the last is the most important "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

Appellant has set forth three allegations of prejudice from the complained delay:

1. "In Appellant's case, he testified that he had been held in custody and denied parole opportunities to achieve reinstatement for his parole . . . . He was told on at least two occasions that the only reason for his continued incarceration[, instead of release on parole,] was the detainer from Smith County."

2. "Appellant testified that he had been worried and anxious during his incarceration due to the fact that he was getting nowhere in his attempts to resolve this matter. . . . This despair and anxiety can best be seen in the actions of Appellant in repeatedly contacting Smith County to obtain [a] resolution."

3. "[Appellant testified] that he had lost contact with the witnesses that had been with him at the time of arrest and no longer was able to locate them to testify on his behalf."

5

According to Appellant, "[t]hese are recognizable prejudicial effects to [him.]"

At the speedy trial hearing, Appellant testified that, because of his pending charge in this case, he was denied timely parole from his prior life sentence for burglary of a habitation. Appellant offered no evidence to support his contention other than his own testimony, which the trial court subsequently found in its written findings "could not be credible." The trial court based this finding on the fact that Appellant had omitted from his testimony that he had not one, but two cases actually pending at the time of his speedy trial hearing. This second case was also for driving while intoxicated, occurring in Dallas County one week after the offense that is the subject of this appeal. In light of the undisputed facts before us, we defer to the trial court's determination of Appellant's credibility.

As to the issue of Appellant's alleged mental suffering, as discussed above, there is no credible evidence that Appellant would not have been justifiably incarcerated the entire time of the alleged delay, regardless of the misdemeanor charge in question. Therefore, we cannot discern that the delay actually caused Appellant significantly more mental suffering than he would have experienced because of the pending Dallas County case. In other words, had the Smith County case been promptly resolved, Appellant could have experienced the same amount of mental suffering and the same effect on his parole status by having a remaining case pending in Dallas County for a similar offense.[2] Further, Appellant's only evidence to support his distress was his own testimony, the testimony of a witness found by the trial court to be less than credible.

As to the issue of losing contact with witnesses, Appellant failed to produce any evidence that specifically points to the usefulness of these witnesses to Appellant's case. *See Deeb v. State*, 815 S.W.2d 692, 706 (Tex. Crim. App. 1991). Instead, Appellant merely asserted that he had lost contact with witnesses whom he might "possibly" call. Appellant offered no assertions or evidence related to any favorable testimony that could be given by any witness. As such, Appellant failed to support his argument regarding witnesses with the necessary evidence of prejudice. *See id.*

*Balancing of the Factors*

To perform the necessary balancing, we should first evaluate the strength of each of the four factors and then balance the respective strengths of those factors against the relative weights of the

---

[2] No evidence was presented as to whether Appellant had sought or been denied a speedy trial in the Dallas County case.

6

remaining factors "in light of the conduct of both the prosecution and the defendant." ***Zamorano v. State***, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). Comparing the facts in the case at hand to United States Supreme Court case law, it is reasonable to conclude that the State did not violate Appellant's right to a speedy trial. *See, e.g.,* ***Barker***, 407 U.S. at 533-37, 92 S. Ct. at 2193-95 (no speedy trial violation where delay exceeded five years with more than four years of the delay unexcused). Here, Appellant waited approximately seven months before asserting his right to a speedy trial. We also note the lack of evidence of bad faith on the part of the State, the trial court's finding of parts of Appellant's testimony to be incredible, and the scant evidence of prejudice. Under these facts, we are not persuaded that Appellant's right to a speedy trial was violated. Therefore, we overrule Appellant's sole issue.

## DISPOSITION

We ***affirm*** the judgment of the trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered December 17, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

7