Reginald HOLMES, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–96–00025–CR.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 16, 1996.

Decided Dec. 17, 1996.

Connie Mitchell, Texarkana, for appellant.

Alwin A. Smith, Assistant District Attorney, Texarkana, for appellee.

Before CORNELIUS, C.J., and GRANT· and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

Reginald Holmes appeals from his conviction for sexual assault and indecency with a child. He was convicted in a jury trial and sentenced to fifteen years' imprisonment and a $5,000.00 fine.

Although factual sufficiency is not raised, we briefly set forth the facts so that the second point of error may be placed in some context. The victim testified that Holmes sexually assaulted her on the afternoon of May 8, 1992, while she was staying at the home of Holmes's estranged wife, the victim's older sister. During the assault Holmes's mother-in-law (the mother of the victim) pulled into the driveway and saw Holmes get up and run away. She testified that there was blood on the victim's shorts. She took the victim to the hospital, and there is medical testimony confirming a sexual assault.

Holmes first contends that his conviction should be reversed because he was denied his constitutional right to a speedy trial. The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees the right to a speedy trial. The Texas Constitution guarantees the same right in Article I, § 10.

To determine whether an accused has been denied the right to a speedy trial, the trial court employs the balancing test set out in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117 (1972). In reviewing Holmes's claim of error, we apply the *Barker v. Wingo* balancing test *de*

*novo.*[1] *Emery v. State,* 881 S.W.2d 702, 708 (Tex.Crim.App.1994). Under this test the reviewing court considers the length of delay, the reason for the delay, the defendant's assertion of the right, and prejudice to the defendant resulting from that delay. *Deeb v. State,* 815 S.W.2d 692, 704 (Tex.Crim.App. 1991), *cert. denied,* 505 U.S. 1223, 112 S.Ct. 3038, 120 L.Ed.2d 907 (1992). Holmes makes no separate argument on Texas constitutional grounds.

The following is a chronology of this prosecution:

May 8, 1992, the sexual assault occurs.

June 27, 1992, Holmes is arrested and released on bond.

March 1, 1993, first court setting. Holmes did not appear.

April 1993, Holmes is rearrested and again released on bond.

June 7, 1992, case passed on defense motion.

June 21, 1993, case called for trial. Holmes pleads not guilty.

April 10, 1995, capias issued for Holmes's arrest.

May 21, 1995, Holmes is rearrested in San Antonio.

June 5, 1995, case set for trial on this date, continued at Holmes's request so that a polygraph could be taken. (Holmes then refused to take the polygraph.)

October 17, 1995, case transferred to the 202nd District Court on request of defendant.

November 2, 1995, Holmes files a pro se motion for speedy trial.

January 25, 1996, new attorney appointed.

February 27, 1996, case goes to trial.

■ Holmes argues that the continuance of the case on June 7, 1992 must be charged

to the State because the record does not show who requested the continuance. The statement of facts does show, however, that the prosecutor in his colloquy with the district judge stated that the case was passed on June 7, 1992 on the motion of the defense. Holmes's counsel was present at that discussion and participated in it when she chronicled her asserted delays. She did not dispute or contradict the prosecutor's statement that the "pass" on June 7, 1992 was at the defense's request. At any rate, the continuance on June 7 had little effect on the overall delay, since the case was called and Holmes pleaded not guilty on June 21, 1992, just fourteen days later.

■ The docket reflects no activity in this case between June 21, 1993 and April 10, 1995. During a discussion between counsel and the court at the hearing on the speedy trial motion, it became apparent that there had been at least two interim conversations between counsel and the court in chambers during which defense counsel had stated that he did not know where to find his client. The prosecutor stated that he did not immediately pursue the case because he wanted to allow defense counsel time to locate Holmes. Defense counsel, however, finally abandoned his efforts to find Holmes and told the prosecutor that he had been unable to locate or contact his client. At that time, in April 1995, a capias was issued. Holmes was arrested in San Antonio on May 21, 1995.

We first look at the length of the delay. The delay in commencement of the trial must be of sufficient length to be presumptively prejudicial before a review of the remaining three factors is triggered. *Barker v. Wingo,* 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. The length of the delay is measured from the time the defendant is arrested or

1. There is some disagreement about whether appellate review should be *de novo,* or whether we should review the trial court's ruling on the matter using an abuse of discretion standard. The Fort Worth Court of Appeals discussed this problem in some detail in *Clarke v. State,* 928 S.W.2d 709 (Tex.App.—Fort Worth 1996, no pet. h.). We agree in principle with the concurrence that we should review the trial court's decision rather than making a *de novo* review because this is a fact-driven question. However, we must

also agree with the majority in that opinion that the Court of Criminal Appeals in *Emery v. State,* 881 S.W.2d 702 (Tex.Crim.App.1994), has very slightly altered the language of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to provide that the *reviewing* court is to independently consider the evidence. This conclusion is further supported by the *Emery* court's independent review of the evidence on a speedy trial point. Thus, we address the issue anew.

formally accused, and a speedy trial claim will not be entertained until passage of a period of time that is on its face unreasonable under the circumstances. From the date of Holmes's arrest until trial, three years and nine months elapsed. It has been held that any delay over eight months is presumptively unreasonable. *Harris v. State,* 827 S.W.2d 949, 956 (Tex.Crim.App. 1992); *State v. Perkins,* 911 S.W.2d 548, 552 (Tex.App.—Fort Worth 1995, no pet.).

We thus turn to the next factor, the reason for the delay. Continuances at Holmes's request are shown until June of 1993. Those delays may not be assessed against the State. The subsequent time period between that date and the eventual date of his arrest in San Antonio is largely due to the delay while defense counsel unsuccessfully sought to locate Holmes. From the time Holmes was arrested until the date of trial, various delays occurred that were caused in part by his two requests to take a polygraph test followed by his refusal to take the test, the transfer of the case to a different court, and the appointment of new counsel. These delays are not chargeable against the State.

Holmes did not assert his right to a speedy trial until November 1995, and the trial was held three months later. Although his failure to assert the claim earlier does not waive the right, his failure to assert the right in a more timely fashion tends to indicate that he did not want a speedy trial. *Barker v. Wingo,* 407 U.S. at 531–32, 92 S.Ct. at 2192–93, 33 L.Ed.2d at 117–18; *Harris v. State,* 827 S.W.2d at 957.

The final factor to consider is prejudice resulting from the pretrial delay. Delay can be harmful because pretrial incarceration may be oppressive, the accused may be unduly subjected to anxiety and concern, and the accused's defense may be impaired by loss of exculpatory evidence and dimming memories. *Barker v. Wingo,* 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.

Holmes was incarcerated for a relatively short time during the early portion of this time period, and then again from June 1995 until trial in February 1996. The reason for his later incarceration is largely due to his own activities in violating bail twice and then disappearing.

It is likely that Holmes was subjected to anxiety and concern as a result of the charge against him, but that concern could have been alleviated had he remained in contact with his attorney and earlier sought the relief he now seeks. This factor does not operate in favor of his claim.

The additional prejudice Holmes asserts stems from the victim's inability to clearly remember various facts when asked about them at trial. Admittedly, it is difficult to adequately cross-examine a witness when she cannot clearly remember some of the facts, but that same inability to remember also weakens the State's case. There is no suggestion of alibi witnesses whose memories dimmed, or that evidence was damaged by the delay.

After applying the various factors to the case, we conclude that most of the delay in trying Holmes was largely attributable to Holmes's own actions. The remaining delay is unremarkable. Those facts, combined with Holmes's failure to invoke his right until November 1995 and the lack of any particularized prejudice from the delay, leads us to the conclusion that the balance is in favor of the State. The court did not err by overruling Holmes's speedy trial motion.

■ Holmes next contends that the trial court erred by failing to grant his motion for a new trial because of newly discovered evidence. On the morning of the second day of trial, Holmes's estranged wife brought to the district attorney a pair of boy's underwear, apparently stained with blood, that she said were found in the attic of the home in which she and the victim were living at the time of the attack. She stated that she had found them a year after the attack. Holmes's request for a continuance was tabled by the court, who refused to rule on the motion unless the underwear was introduced into evidence. It was not.

TEX.CODE CRIM.PROC.ANN. art. 40.001 (Vernon Supp.1997) provides: "A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." The granting or deny-

ing of a motion for new trial is within the discretion of the trial court. We do not substitute our judgment for that of the trial court, but rather decide whether the trial court's decision was arbitrary or unreasonable. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim.App.1995); *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex.Crim.App.1993). Motions for new trial based on newly discovered evidence are not favored by the courts and are viewed with great caution. *Drew v. State*, 743 S.W.2d 207, 225–26 (Tex.Crim.App. 1987).

To show that the trial court abused its discretion in not granting a new trial, the movant must show: (1) the newly discovered evidence was unknown to the movant at the time of trial; (2) the failure to discover the evidence was not due to his want of diligence; (3) the evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the evidence is probably true and would probably bring about a different result in another trial. *Moore v. State*, 882 S.W.2d 844, 849 (Tex.Crim.App.1994).

Here, the evidence became known to Holmes during the trial. Moreover, Holmes has failed to establish the fourth prong, that the new evidence is probably true and would probably bring about a different result in another trial.

Even if the blood tests desired by the defense showed that the underwear was stained by the victim's blood, it would not tend to disprove the State's case. At most, it might show that the victim had sexual intercourse with someone else, without rebutting the testimony that Holmes committed the crime charged. Likewise, if the blood was shown to be neither the victim's nor Holmes's, it would not indicate that the victim had engaged in other sexual conduct, nor would it be favorable to Holmes's defense. In this situation, we cannot say that the trial court abused its discretion by denying the motion for new trial.

The judgment of the trial court is affirmed.