In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00095-CR
______________________________


DANA HARVEY, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 5th Judicial District Court
Bowie County, Texas
Trial Court No. 01F0051-005


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Cornelius,* JJ.
Opinion by Justice Ross
*William J. Cornelius, C.J., Retired, Sitting by Assignment


O P I N I O N

Â Â Â Â Â Â Â Â Â Â Dana Harvey was convicted by a jury for the felony offense of driving while
intoxicated. Punishment was assessed by the court at five years' imprisonment. Harvey
was duly sentenced, after which the court ordered that, after 100 days' imprisonment,
Harvey be brought back before the court to be considered for community supervision.


 
Â Â Â Â Â Â Â Â Â Â Harvey raises seven points of error, which he has consolidated into five arguments. 
Because he failed to adequately brief it, we will not address his complaint about the trial
court denying his request to have all witnesses enter the courtroom from the same door. 
We overrule his other points and affirm the judgment. 
FAILURE TO BRIEF ISSUE PRECLUDES REVIEW
Â Â Â Â Â Â Â Â Â Â Harvey's second point of error claims the trial court erred when it denied his motion
for the State's witnesses not to be allowed to enter the courtroom through a back door,
when defense witnesses entered through a different door. Harvey contends such practice
unfairly bolstered the credibility of the State's witnesses. 
Â Â Â Â Â Â Â Â Â Â Harvey provides no legal authority in support of this contention. A point of error that
is conclusory and cites no authority presents nothing for review. Garcia v. State, 887
S.W.2d 862, 871 (Tex. Crim. App. 1994); Pierce v. State, 777 S.W.2d 399, 418 (Tex.
Crim. App. 1989); Burns v. State, 923 S.W.2d 233, 237 (Tex. App.âHouston [14th Dist.]
1996, pet. ref'd). We find this point of error to be inadequately briefed and decline to
address it. See Tex. R. App. P. 38.1(h); Vuong v. State, 830 S.W.2d 929, 940 (Tex.
Crim. App. 1992).
RIGHT TO SPEEDY TRIAL NOT VIOLATED
Â Â Â Â Â Â Â Â Â Â Harvey complains the trial court erred at the pretrial hearing 1) in denying his motion
to dismiss, based on denial of a speedy trial;


 and 2) in precluding him from questioning
the prosecutor at that hearing. Although almost four years passed between Harvey's arrest
and conviction, we hold that he suffered no constitutional deprivation.
Â Â Â Â Â Â Â Â Â Â Proceedings Relevant to Speedy Trial Issue
Â Â Â Â Â Â Â Â Â Â Harvey was arrested November 3, 2000. An indictment was returned against him
February 22, 2001. Harvey testified at the pretrial hearing he had difficulty remembering
events surrounding his arrest. He contended this loss of memory was prejudicial to his
rights. He also testified he could no longer find a witness whose testimony he believed
would be important. 
Â Â Â Â Â Â Â Â Â Â Harvey retained Rick Shumaker as his attorney around April 2, 2001. Shumaker
testified at the pretrial hearing that several continuances were obtained between the date
of his retention and February 2004, when he withdrewâat Harvey's requestâas Harvey's
attorney. 
Â Â Â Â Â Â Â Â Â Â At the pretrial hearing,


 the court conducted an in camera inspection of the front of
the State's file. A photocopy of what the court inspected was attached to the appellate
record as a sealed exhibit. The relevant entries on that exhibit are as follows:
Â Â Â Â Â Â Â Â Â Â â¢Â Â Â Â Â Â Â Â Â 4-2-01Â Â Â Â Â Â Â Â Â Â Â P/T 5-14-01
Â Â Â Â Â Â Â Â Â Â â¢Â Â Â Â Â Â Â Â Â 5-14-01Â Â Â Â Â Â Â Â Â Reset P/T 6-11-01
Â Â Â Â Â Â Â Â Â Â â¢Â Â Â Â Â Â Â Â Â 6-11-01Â Â Â Â Â Â Â Â Â Reset P/T [ entry scratched out] 8-20-01
â¢8-20-01Trial [entry scratched out] 12/10/01 Reset 1-22-01 [sic] (Order PSI) Set Plea 2-4-02 per . . . 
Â Â Â Â Â Â Â Â Â Â â¢Â Â Â Â Â Â Â Â Â 2-4-02Â Â Â Â Â Â Â Â Â Â Â Reset Plea 3-18-02
Â Â Â Â Â Â Â Â Â Â â¢Â Â Â Â Â Â Â Â Â 3-18-02Â Â Â Â Â Â Â Â Â Reset Plea [entry scratched out] 4-15-02
Â Â Â Â Â Â Â Â Â Â â¢Â Â Â Â Â Â Â Â Â 4-15-02Â Â Â Â Â Â Â Â Â Reset Plea [entry scratched out] 5-13-02
Â Â Â Â Â Â Â Â Â Â â¢Â Â Â Â Â Â Â Â Â 5-13-02Â Â Â Â Â Â Â Â Â BFAC no (in Rehab) Reset 6-24-02
Â Â Â Â Â Â Â Â Â Â â¢Â Â Â Â Â Â Â Â Â 12-10-03Â Â Â Â Â Â Â Reset Plea 1-5-03 [sic]
Â Â Â Â Â Â Â Â Â Â â¢Â Â Â Â Â Â Â Â Â 1-5-04Â Â Â Â Â Â Â Â Â Â Â Reset Plea 2-2-04
Â Â Â Â Â Â Â Â Â Â â¢Â Â Â Â Â Â Â Â Â 2-2-04Â Â Â Â Â Â Â Â Â Â Â Reset Plea in Absentia 3-15-04


Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â â¢Â Â Â Â Â Â Â Â Â 3-15-04Â Â Â Â Â Â Â Â Â Set Trial 4-12-04
Â Â Â Â Â Â Â Â Â Â â¢Â Â Â Â Â Â Â Â Â 4-12-04Â Â Â Â Â Â Â Â Â Set for trial Jury Selection 4-15-04/9:00 New Boston

Â Â Â Â Â Â Â Â Â Â Shumaker's testimony at the pretrial hearing corroborates the entries and the dates
shown on the State's file folder. He testified some of the continuances obtained during his
representation of Harvey were due to Harvey "going through . . . some things," which
included a twenty-eight-day stay at a residential treatment center where Harvey was
treated for alcoholism. Shumaker said that, at one point during the delay in bringing
Harvey to trial, about one and a half years passed without receiving any contact from the
trial court about the case being set for trial. The front of the State's file folder confirms
there was a gap of inactivity from May 13, 2002 to December 10, 2003. Shumaker said
he was always able to reach an agreement with the State about resetting the case. He
confirmed the note on the front of the State's file that a presentence investigation (PSI)
report was ordered August 20, 2001, and that the case was set for a plea to occur in
February 2002, but was postponed to March 2002. From August 2001 to February 2004,
it appears the parties anticipated the case would be resolved by a plea agreement. 
However, Harvey failed to appear at a scheduled hearing in May 2002, apparently because
he was in the rehabilitation center. Although the trial court forfeited Harvey's bond because
of this failure to appear, Shumaker was successful in persuading the State to ask the trial
court to rescind the bond forfeiture, which request the trial court granted. Shumaker
confirmed at the pretrial hearing that he had agreed to inform the State when Harvey had
completed his rehabilitation so the case could again be set for disposition. Shumaker was
uncertain as to whether he ever did this, and stated that his last recollection on the case
was a setting in late 2003 or early 2004. 
Â Â Â Â Â Â Â Â Â Â In early 2004, Harvey retained Don Cooksey as his new counsel. On FebruaryÂ 2,
2004, Harvey filed several motions, including various requests for discovery, for applicable
notices, for the withdrawal of Shumaker as his attorney, and for dismissal, alleging a
violation of Harvey's right to a speedy trial. 
Â Â Â Â Â Â Â Â Â Â Speedy Trial Analysis
Â Â Â Â Â Â Â Â Â Â In determining whether an accused has been denied his or her right to a speedy
trial, a court must use a balancing test "in which the conduct of both the prosecution
and the defendant are weighed." Barker v. Wingo, 407 U.S. 514, 530 (1972). The
factors to be weighed in the balance include, but are not necessarily limited to, the
length of the delay, the reason for the delay, the defendant's assertion of his or her
speedy trial right, and the prejudice to the defendant resulting from the delay. Id. No
single factor is necessary or sufficient to establish a violation of the right to a speedy
trial. Id. at 533; Dragoo v. State, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003). If a
violation of the speedy trial right is established, the only possible remedy is dismissal
of the prosecution. Strunk v. United States, 412 U.S. 434, 440 (1973).
Â Â Â Â Â Â Â Â Â Â Almost three and one half years passed between Harvey's arrest and his trial. 
There was evidence some continuances had been obtained either at Harvey's request or
with his approval. There was also evidence the parties contemplated entering a plea
agreement. While the length of the delay is enough to justify concern,


 the reasons for
delay suggest Harvey either acquiesced in repeated postponements of the case, or did not
object to such delays. He obviously did not assert his right to a speedy trial until about
three years and three months after his arrest. He was tried less than three months after
filing his motion for dismissal. 
Â Â Â Â Â Â Â Â Â Â The possibility of ongoing plea negotiations was a consideration in the Texas Court
of Criminal Appeals' recent analysis of a speedy trial claim. Kelly v. State, 163 S.W.3d
722, 727 (Tex. Crim. App. 2005). In stressing the deference an appellate court must give
to a trial court's findings, the court stated a trial court may infer the existence of plea
negotiations, even in the absence of direct evidence of the same. Id. Accordingly, when
analyzing the reasons for the delay in bringing Harvey to trial, we consider, as the trial court
likely did, the evidence of plea negotiations. Based on the significant evidence that, for as
long as two and one half years, the parties intended to resolve this case by a plea
agreement, we construe these reasons for the delay against Harvey, not against the State.
Â Â Â Â Â Â Â Â Â Â Further, in conducting our Barker v. Wingo analysis, we consider whether Harvey
was prejudiced by the delay. Harvey testified he believed he had suffered prejudice. He
also said he had attempted to subpoena an individual named Mike James. Harvey did not,
however, offer any evidence as to what testimony he anticipated James would provide. 
He also failed to show the efforts he had made to secure James' testimony.


 Where the
defendant does not present evidence of particularized prejudice suffered as a result of the
passing of time between arrest and assertion of his or her right to a speedy trial, such lack
of evidence will be considered against the defendant's claim of prejudice suffered. See
Harris v. State, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992); Holmes v. State, 938 S.W.2d
488, 491 (Tex. App.âTexarkana 1996, no pet.).
Â Â Â Â Â Â Â Â Â Â Considering the history of this case, and the evidence adduced in connection with
Harvey's claim, we hold that: the length of the delay raises a presumption of unreasonable
delay; the reasons for the delay are attributable in significant part to Harvey; plea
negotiations were being conducted, and the matter was set for a plea on several
occasions, and these facts weigh against Harvey's complaint; Harvey failed to affirmatively
assert his right to a speedy trial for more than three years, and then received a trial within
three months of his request;


 and there is no evidence of particularized prejudice. Based
on this analysis, the trial court did not err in overruling Harvey's motion for dismissal. 
Â Â Â Â Â Â Â Â Â Â No Error in Precluding Harvey from Putting Prosecutor on Stand
Â Â Â Â Â Â Â Â Â Â Harvey attempted to call the prosecutor as a witness at the pretrial hearing on his
motion to dismiss. Harvey's stated purpose was to "introduce a copy of the outside of [the
prosecutor's] file where he kept notes regarding the proceedings in this case. I think . . .
in the event that this is on appeal, the appellate court would need to look at a copy of the
notes on the file of the district attorney." The State provided a copy of the front of its file,
the trial court reviewed that copy in camera, and the copy was sealed and forwarded to this
Court for appellate review. The trial court denied Harvey's request to call the prosecutor
to testify. Harvey now claims such denial was error.
Â Â Â Â Â Â Â Â Â Â Harvey received the relief he requested when the trial court made the copy of the
prosecutor's notes a part of the record for appellate review. Harvey failed to make any
record of what else, if anything, he anticipated the prosecutor's testimony to provide. 
Nothing is preserved for appellate review. Warner v. State, 969 S.W.2d 1, 2 (Tex. Crim.
App. 1998); Greenwood v. State, 948 S.W.2d 542, 549 (Tex. App.âFort Worth 1997, no
pet.); see Tex. R. App. P. 33.2. Harvey's points of error regarding a violation of his right to
a speedy trial are overruled. 
STATE PROPERLY ALLOWED TO READ JURISDICTIONAL PRIOR CONVICTIONS
Â Â Â Â Â Â Â Â Â Â Harvey contends the State should not have been permitted to read the complete
indictment at trial, including the paragraphs detailing two prior DWI convictions. These two
prior convictions, if proved, would elevate Harvey's charged offense to a third degree
felony.


 Harvey stipulated to his prior convictions, and the trial court instructed the jury that
it was required to find Harvey had been previously twice convicted of DWI offenses. 
Â Â Â Â Â Â Â Â Â Â This issue is controlled by the Texas Court of Criminal Appeals' rulings in Robles
and Tamez.


 In Robles, the appellant offered to stipulate to the existence of the two prior
convictions and requested the trial court prevent the state from introducing evidence of
those convictions. His request was denied. The Texas Court of Criminal Appeals held that
the stipulation should have been approved and the state prevented from entering into
evidence the judgments of the jurisdictional prior convictions. Robles, 85 S.W.3d at
213â14. In Tamez, the appellant offered to stipulate to his previous DWI convictions,
thereby satisfying the jurisdictional requirements of Section 49.09(b). Nonetheless, the
state was allowed to read the full indictment, which contained allegations of six prior DWI
offense convictions, and the state was further allowed to enter into evidence judgments
proving all six previous convictions. Tamez, 11 S.W.3d at 199. The Texas Court of
Criminal Appeals held this was unduly prejudicial to Tamez and was reversible error. The
court said, "[T]he proper balance is struck when the State reads the indictment at the
beginning of trial, mentioning only the two jurisdictional prior convictions, but is foreclosed
from presenting evidence of the convictions during its case-in-chief." Tamez, 11 S.W.3d
at 202. 
Â Â Â Â Â Â Â Â Â Â The procedure suggested by the Texas Court of Criminal Appeals in Tamez is
exactly what happened in Harvey's trial. Harvey claims in his brief that "the State in voir
dire, and throughout the guilt-innocence phase of this case referred to and tried to refer to
evidence of Appellant's prior DWI convictions which violated Appellant's right to stipulate." 
Harvey does not direct us to any place in the record where the State "referred to and tried
to refer to" such evidence. From our review of the record, we have no such contravention
of the procedures prescribed in Tamez and Robles. We overrule this point of error. 

EVIDENCE SUFFICIENT TO SUPPORT CONVICTION

Â Â Â Â Â Â Â Â Â Â Harvey claims, in a single point of error, that the evidence was legally and factually
insufficient to support the jury's conviction. We disagree. 
Â Â Â Â Â Â Â Â Â Â The Evidence
Â Â Â Â Â Â Â Â Â Â Two Texarkana police officers testified that, on November 3, 2000, at around 2:00
a.m., they were concluding a traffic stop on the side of westbound Interstate 30 when they
saw Harvey, driving a black Blazer truck, pass them and briefly cross the yellow line. The
officers followed Harvey and saw him cross the yellow line again, then cross the white line
to the right. When Harvey crossed to the right lane, but used the turn signal indicator for
a single "blink" when the vehicle was almost entirely in the new lane, the officers
determined Harvey might be impaired and activated their overhead lights to stop him. The
officers both testified Harvey continued driving on the interstate for a mile to a mile and a
half after they activated their patrol car's overhead lights. 
Â Â Â Â Â Â Â Â Â Â Officer Greg Vickers testified he made contact with Harvey. When asked to produce
his driver's license and proof of insurance, Harvey was very slow and deliberate. Vickers
said that it took Harvey four to five minutes to produce his driver's license and that it was
clear Harvey had difficulty understanding what Vickers was asking. Vickers smelled
alcohol when Harvey lowered his window. When Harvey was told to exit his truck, Vickers
and Officer Gerald Palmore observed Harvey stagger and lean against the truck for
support. The officers testified that, when they asked Harvey to participate in field sobriety
tests (FSTs), he was uncooperative. When Harvey did attempt to perform the FSTs, he
did not perform well: he missed touching the tip of his nose three of four times; slurred his
speech when reciting the alphabet; generally failed to follow instructions; swayed back and
forth; and, at one point, Vickers had to extend his own hand to keep Harvey from falling. 
Palmore administered the horizontal gaze nystagmus test and testified that Harvey's eyes
showed the onset of nystagmus before Palmore's stimulus reached the 45-degree angle. 
Palmore said that, based on his training and the scientific studies he had reviewed, a
person with nystagmus at such points would have a blood alcohol level of at least 0.10
percent. 
Â Â Â Â Â Â Â Â Â Â Based on these preliminary observations and test results, Harvey was arrested for
DWI. He was taken to the police station. The interview with Harvey at this location was
videotaped and introduced into evidence. In the interview, some of the FSTs are repeated. 
Harvey can be clearly seen leaning against a door for support while performing a one-legged lift. He also had difficulty reciting the alphabet. Harvey agreed to provide a sample
of his breath for an Intoxilyzer test, and Sergeant Bill Looney was called to administer this
test. In the videotape, Harvey can be seen reaching into his pocket, then hurriedly putting
his hand to his mouth and begin chewing rapidly. Looney testified that, when he was
commencing the test, instead of providing a breath sample, Harvey spat tobacco juice into
the mouthpiece. Looney removed, cleaned, and returned the mouthpiece. On two more
occasions, Harvey failed to breathe into the machine with sufficient force to provide a
useable sample. Looney marked Harvey as having refused to provide a sample. Â Â Â Â Â Â Â Â Â Â Legal Sufficiency
Â Â Â Â Â Â Â Â Â Â Â Â In our review of the legal sufficiency of the evidence, we employ the standards set
forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the reviewing court to
view the relevant evidence in the light most favorable to the verdict and determine whether
any rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In our
review, we must evaluate all of the evidence in the record, both direct and circumstantial,
whether admissible or inadmissible. Dewberry v. State, 4Â S.W.3d 735, 740 (Tex. Crim.
App. 1999). It is clear that, based on the evidence presented here, a rational jury could
have found that Harvey was guilty of driving while intoxicated. 
Â Â Â Â Â Â Â Â Â Â Factual Sufficiency
Â Â Â Â Â Â Â Â Â Â In a factual sufficiency review, the appellate court views all the evidence in a
neutral light and determines whether the evidence supporting the verdict is too weak
to support the finding of guilt beyond a reasonable doubt or if evidence contrary to the
verdict is strong enough that the beyond-a-reasonable-doubt standard could not have
been met. Threadgill v. State, 146 S.W.3d 654, 664 (Tex. Crim. App. 2004) (citing
Zuniga v. State, 144 S.W.3d 477, 486 (Tex. Crim. App. 2004)). If the evidence is
factually insufficient, we must reverse the conviction and remand the case for a new trial. 
Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996). 
Â Â Â Â Â Â Â Â Â Â Through cross-examination of the State's witnesses and by his own witnesses,
Harvey established he had suffered serious back injuries in the past and, at the time of this
alleged offense, he was on medications for both his back and high blood pressure. At the
interview at the police department, Harvey stated his last dose of medication was taken
around noon. This was directly contradicted by Harvey's testimony to the jury that he had
taken a dose of his medication before going to the bar on the night of his arrest and that
he also took a pill during the video interview after his arrest. 
Â Â Â Â Â Â Â Â Â Â Based on the evidence adduced in this case, there is ample evidence to support the
jury's finding of guilt beyond a reasonable doubt. See Zuniga, 144 S.W.3d at 484â85. 
Likewise, we cannot say the contrary evidence is so strong the State could not have met
its burden of proof. See id. The evidence was factually sufficient to support Harvey's
conviction. We overrule Harvey's legal and factual sufficiency points of error. 
NO ERROR IN SENTENCING
Â Â Â Â Â Â Â Â Â Â Harvey's last two points of error claim the trial court erred in sentencing him to a
period of "shock probation." According to Harvey, the trial court's sentence was against
the great weight of the evidence. The State presented no evidence at the punishment
hearing and did not cross-examine Harvey's punishment phase witnesses (including
Harvey himself). In closing arguments, the State asked the trial court to place Harvey on
ten years' community supervision and to put Harvey on "shock probation." Harvey's
attorney asked for five years' community supervision. 
Â Â Â Â Â Â Â Â Â Â We first point out that Harvey's sentence was clearly within the range of punishment
prescribed by the Legislature for a third degree felony.
Â Â Â Â Â Â Â Â Â Â Traditionally, the trial court is accorded great discretion in assessing a defendant's
punishment. Samuel v. State, 477 S.W.2d 611, 614 (Tex. Crim. App. 1972); see also
Morano v. State, 572 S.W.2d 550, 551 (Tex. Crim. App. [Panel Op.] 1978) ("When a
defendant waives a jury trial, the trial judge has discretion to assess the punishment within
the range provided by law which he finds appropriate in the circumstances."). 
Â Â Â Â Â Â Â Â Â Â While it is true the State did not present evidence or cross-examine Harvey's
witnesses at the punishment hearing, the trial court had before it all the evidence from the
guilt/innocence phase of trial. See Trevino v. State, 100 S.W.3d 232, 238 (Tex. Crim. App.
2003) (noting no requirement evidence from guilt/innocence be formally reoffered at
sentencing). Harvey's witnesses included his Alcoholics Anonymous sponsor and a friend,
also affiliated with Alcoholics Anonymous. Harvey testified he had completed a residential,
inpatient treatment program for alcoholism and attends no less than five Alcoholics
Anonymous meetings per week. Harvey's argument on appeal is that, because the PSI
report generated by the local community supervision department did not mention "shock
probation," the evidence only supports a placement on community supervision, without a
term of incarceration. 
Â Â Â Â Â Â Â Â Â Â The recommendation in the PSI report states, in pertinent part, "the court may wish
to consider the following conditions of probation . . . [b]e sentenced to Ten (10) years in the
Texas Department of Criminal Justice Institutional Division, but suspended and placed on
probation for a period of Ten (10) years." 
Â Â Â Â Â Â Â Â Â Â As we have pointed out, sentencing is within the sound discretion of the trial court,
and we review the sentence imposed by a trial court for an abuse of such discretion. 
Jackson v. State, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984). Harvey has not explained
how the trial court, which assessed a punishment well within the statutory range, abused
its discretion in ordering Harvey to be incarcerated for 100 days and then be considered
for community supervision. Such is clearly within the trial court's discretion. The statute
authorizing such procedure clearly states: "the judge of the court that imposed such
sentence may . . . suspend further execution of the sentenceÂ .Â .Â . ." Tex. Code Crim. Proc.
Ann. art. 42.12, Â§ 6(a); see also State ex rel. Bryan v. McDonald, 642 S.W.2d 492, 494
(Tex. Crim. App. 1982). The use of "may" creates discretionary authority in the trial court. 
Tex. Gov't Code Ann. Â§Â 311.016 (Vernon 2005). A trial court will be found to have abused
its discretion only if there is no evidence or factual basis for the punishment imposed. 
Jackson v. State, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984); Benjamin v. State, 874
S.W.2d 132, 135 (Tex. App.âHouston [14th Dist.] 1994, no pet.). Because the sentence
imposed was within the applicable range of punishment, and based on the evidence before
the trial court, we find the trial court did not abuse its discretion, and we find no merit in
Harvey's contention. 
NO EVIDENCE TRIAL COURT CONSIDERED MATTERS OUTSIDE THE RECORD 
Â Â Â Â Â Â Â Â Â Â As part of his complaint about the trial court's sentence, Harvey accuses the trial
court of considering matters not in the record in assessing punishment.


 Harvey made no
objection at the trial court level about either the sentence or the trial court's comments at
sentencing. Because Harvey did not present these issues at the trial court level, he did
not preserve these allegations for our review. See Tex. R. App. P. 33.1(a); Jackson v.
State, 989 S.W.2d 842, 844 (Tex. App.âTexarkana 1999, no pet.). We overrule this
point of error.
CONCLUSION
Â Â Â Â Â Â Â Â Â Â We hold that 1) Harvey was not denied a speedy trial; 2) the State correctly read the
predicate convictions for DWI as part of the indictment; 3) the evidence was legally and
factually sufficient to support Harvey's conviction; and 4) there was no error in the trial
court's sentence. 
Â Â Â Â Â Â Â Â Â Â Accordingly, we affirm the judgment.


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Date Submitted:Â Â Â Â Â Â June 27, 2005
Date Decided:Â Â Â Â Â Â Â Â Â September 7, 2005

Publish



so-ansi-language:EN-US;
mso-fareast-language:EN-US;mso-bidi-language:AR-SA'>[7]  Because Sutton had sufficient specific,
articulable facts to create reasonable suspicion, WarrenÂs detention was
reasonable.Â  It is not necessary for us
to evaluate the StateÂs alternative arguments.Â 
The trial court did not err in denying KirbyÂs motion to suppress.Â  

V.Â Â Â Â Â Â Â  ConclusionÂÂModify and
Affirm 

Â Â Â Â Â Â Â Â Â Â Â  In
our review, we noticed the judgment of the trial court does not indicate Kirby
pled nolo contendere.[8]Â  A judgment is required to reflect the plea or
pleas of the defendant to the offense charged.Â 
Tex. Code Crim. Proc. Ann.
art. 42.01 (Vernon Supp. 2010).Â  Our
authority to modify incorrect judgments is neither dependent on the request of
any party, nor does it turn on a question of whether a party has or has not
objected in trial court; we may act sua sponte and may have a duty to do
so.Â  Rhoten
v. State, 299 S.W.3d 349, 356 (Tex. App.ÂÂTexarkana 2009, no pet.).Â  We, therefore, modify the judgment to reflect
Kirby pled nolo contendere.Â  

Â Â Â Â Â Â Â Â Â Â Â  We
modify the judgment to reflect Kirby pled nolo
contendere and affirm as modified.Â  

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Jack
Carter

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  January
4, 2011

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  January
6, 2011

Â 

Do Not Publish











[1]This
case was transferred to this Court from the Tyler Court of Appeals as part of
the Texas Supreme CourtÂs docket equalization program. Â We are not aware of any conflict between the
precedent of the Tyler Court and the precedent of this Court on any issue
relevant in this appeal. Â See TEX. R. APP. P. 41.3.

Â 





[2]Officer
Shavarr Warren testified Officer Sutton, who did not testify at the suppression
hearing, was a licensed police officer.Â  

Â 





[3]Warren
testified Carrizales arrived approximately one minute after the detention. Â Carrizales testified she arrived less than
five minutes after receiving notice that KirbyÂs vehicle had been stopped.Â  Carrizales testified she was already en route
from a location Âmaybe a mile awayÂ when she received notice that the vehicle
had been stopped and she proceeded directly to the location of the
detention.Â  

Â 





[4]Warren
testified Kirby was approaching a school zone.Â 






[5]Sutton
did not testify at the suppression hearing.Â 
Evidence of the specific, articulable facts which created SuttonÂs
reasonable suspicion was testified to by Carrizales and Warren.Â  Carrizales testified concerning the details
of SuttonÂs observations.Â  Warren
testified the complainant had seen some sort of bad driving and the complainant
was Sutton.Â  We further note Sutton
followed Kirby on his personal motorcycle, was present at the detention, and
conversed, albeit briefly, with Warren at the scene of the detention.Â  

Â 





[6]The
fact that Sutton was off duty does not affect his status as a police
officer.Â  See Moore v. State, 999
S.W.2d 385, 404 (Tex. Crim. App. 1999) (police officer who intervened in
burglary acted in his official capacity).

Â 





[7]Because
the requesting officer had sufficient specific, articulable facts to create
reasonable suspicion, this case is distinguishable from Jennings where the requesting officer lacked sufficient specific,
articulable facts to create reasonable suspicion or probable cause.Â  See
Jennings, 958 S.W.2d at 933 (State
failed to present evidence regarding the information known to officer who
allegedly made broadcast).





[8]The
record contains a written plea of nolo
contendere bearing KirbyÂs signature.Â 
The Texas Department of Public Safety criminal history reporting form
also reflected a plea of no contest.Â