COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


| | | |
|---|---|---|
| JERRY-JACOB JAMES CORONA | § | No. 08-23-00116-CR |
| Appellant, | § | Appeal from the |
| v. | § | 81st/218th Judicial District Court |
| THE STATE OF TEXAS, | § | Of Atascosa County, Texas |
| Appellee. | § | (TC# 22-01-0002-CRA) |

## SUBSTITUTED MEMORANDUM OPINION

Before us is Appellant's motion for rehearing. We deny his motion but withdraw our opinion of September 13, 2024 and substitute this opinion in its place.

Appellant Jerry-Jacob James Corona was convicted of aggravated assault with a deadly weapon and sentenced to 16 years.[1] He raises three issues on appeal. Finding no error, we affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Following a confrontation at a bar, Appellant worried that he was being followed home. He parked in a parking lot for a while to see if anyone was following him, so they would not find out where he lived. While in the parking lot, Appellant saw a black SUV that he had seen at a stop

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent they might conflict with our own. *See* Tex. R. App. P. 41.3.

sign after he left the bar. He could not see through the windows of the SUV but, believing it to be the men from the bar, he drove his Dodge Ram pickup beside the SUV, revved his engine and yelled "Take care, homeboy." Appellant then left the parking lot.

The SUV, however, was occupied not by the men from the bar, but by Erica Hutton, a mother who was waiting for her daughter's call to pick her up after a dance. She believed the truck was being driven by rowdy teenagers and she ignored it.[2] Once her daughter called, she left the parking lot and began to drive to her daughter's friend's house.

When Appellant saw Hutton's black SUV behind him, he turned around and began following it, convinced that it was the men from the bar. Hutton stopped at a stop sign, and as she began to turn, Appellant hit her from behind, causing her SUV to spin. Appellant's vehicle then struck a stop sign, knocking it over and deploying his air bags. Hutton estimates that Appellant was going 20–25 miles an hour.[3] Appellant characterized the action as a PIT (precision immobilization technique) maneuver, that was only meant to send a message to leave him alone and not hurt the SUV's occupants.

When Hutton got out of her vehicle, Appellant realized that she was not the men from the bar, and he got in his truck and left the scene. Pictures in evidence showed that the SUV's passenger side taillight was broken, and the bumper was damaged and scratched. Hutton testified that she was not injured and did not seek medical treatment.

On January 10, 2024, Appellant was indicted for aggravated assault with a deadly weapon with penalty enhancements for two prior felony convictions. An attorney was appointed to

---

[2] Hutton said that Appellant drove by her a second time in the parking lot while Appellant stated that he left the parking lot after yelling at Appellant. The two agreed, however, that Appellant left the parking lot first.

[3] The accident reconstruction expert did not give an opinion of Appellant's speed at the time of the accident. Appellant argued he was driving 15 miles an hour.

represent him. At a docket call on July 19, 2022, Appellant told the trial court that he wanted to represent himself. After Appellant explained that he did not trust his attorney, the judge allowed his attorney to withdraw, but denied his self-representation request and appointed another attorney for him. At the same hearing, Appellant told the court that he was ready for trial. The judge explained to him, however, that he had a backlog of 144 cases on his docket because of COVID-19, and the priority for trial settings are the oldest cases where the defendant is incarcerated. On November 16, 2022, Appellant again requested to represent himself. After a lengthy hearing at which the trial court attempted to persuade Appellant of the risks of self-representation, the trial court granted his request but retained his appointed attorney as a stand-by counsel to provide advice to Appellant if requested.

Appellant, Hutton, and law enforcement officers testified at trial. Appellant did not dispute that he hit Hutton's vehicle with his truck. He argued that he was justified in doing so because of his mistaken belief that the SUV was driven by men harassing and threatening him. He also argued that his truck was not a deadly weapon because the collision could not have caused death or serious bodily injury. Officers testified that a PIT maneuver is highly dangerous that could involve risk of injury or death and that even trained officers are not allowed to use it. The officers also testified that vehicle accidents, even those caused by slow-speed impacts, can cause serious bodily injury or death.

The court found Appellant guilty. The State waived one of the enhancement paragraphs for a prior felony conviction and the trial court sentenced him to 16 years. Appellant, represented by appointed counsel on appeal,[4] raises three issues: (1) the district clerk refused to file his pro se

---

[4] Appointed counsel originally filed an *Anders* brief, but after some filings by Appellant, withdrew that brief and filed Appellant's brief on the merits. Despite that turn of events, Appellant has continued to make his own filings, including a Reply Brief. Because defendants cannot have hybrid representation, we consider only those issues raised in the brief filed by his attorney. *Scheanette v. State*, 144 S.W.3d 503, 505 (Tex. Crim. App. 2004) (en banc) (declining to consider

motions while he was represented by an attorney; (2) he was denied a speedy trial; and (3) he was assessed court costs without a hearing about his ability to pay.

## II. ANALYSIS

### A. The district clerk's refusal to file pro se motions

Before November 16, 2022, and while Appellant was still represented, he sent motions to the district clerk for filing. Rather than file them, the clerk gave them to Appellant's attorney. Appellant argues that the clerk's refusal to file the motions violated his right to due process.

The State contends that Appellant did not preserve error for appeal because he did not raise the issue with the trial court and obtain a ruling. Appellant did, however, tell the trial court of his complaint. For example, once pro se, he filed the statement, "I don't believe the District Clerk retained any of my pro se motions filed between April 2022 to November 16th, 2022 . . . ." The trial court informed Appellant that his pleadings had not been filed because he was not the attorney of record and that he could file them then since his attorney had been discharged. Ultimately, though, the issue is not whether he preserved his complaint for appeal, but whether he demonstrates any reversible error.

"In a criminal proceeding, a clerk of the district or county court *shall* [] receive and file all papers . . . ." Tex. Code Crim. Proc. Ann. art. 2.21(a)(1) (emphasis added). Even if the clerk believes that a party has no right to file a pleading, he or she cannot refuse to file it. "Any ruling regarding the propriety of pleadings must be made by the district judge, not by the clerk." *In re Bernard*, 993 S.W.2d 453, 454–55 (Tex. App.—Houston [1st Dist.] 1999, orig. proceeding) (per curiam) (O'Connor, J., concurring opinion). If true, the district clerk would have violated her duty

---

the 26 extra issues raised in a represented appellant's pro se brief). However, because his appointed attorney was allowed to withdraw after our original opinion was issued, we have considered Appellant's pro se motion for rehearing.

4

to file Appellant's motions. Yet that violation is not, as Appellant claims, a ground for challenging his conviction. There is no procedure to appeal the clerk's violation of her duty to file pleadings. The remedy is therefore a mandamus action. *Deleon v. Dist. Clerk*, 187 S.W.3d 473, 474 (Tex. Crim. App. 2006) (per curiam) (granting mandamus and directing the clerk to file relator's application because the inability to appeal the clerk's refusal could not be appealed and had no adequate remedy at law).

But even if cognizable on direct appeal, Appellant must show that it would be reversible error. Tex. R. App. P. 44.2(a), (b). Under either harm standard (constitutional or other error), Appellant's claimed error does not meet the standard. First, even if the clerk had filed Appellant's motions, the court could have disregarded them. *Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007) ("[A] trial court is free to disregard any pro se motions presented by a defendant who is represented by counsel."); *Goodwin v. State*, No. 14-12-00274-CR, 2013 WL 980173, at *3 (Tex. App.—Houston [14th Dist.] Mar. 12, 2013, pet. ref'd) (mem. op., not designated for publication) (trial court did not err in refusing to rule on defendant's pro se motion for speedy trial because he was represented by an attorney). Second, Appellant's brief does not specify what pro se motions were not filed and what meritorious issues, if any, they raised. Third, Appellant filed several motions after his attorney was discharged that were apparently like the motions he had attempted to file before. At a pretrial hearing on December 5, 2022, he informed the trial court "[B]asically all of my motions since, you know, may have virtually all been alike and they continually bring up the same facts." These motions were eventually heard and ruled on. In short, the clerk's refusal to file Appellant's motions when he initially tried to file them did not contribute to his conviction or affect his substantial rights because he filed motions making the same requests at a time when the trial court was able to and did consider and rule on them.

Appellant's first issue is overruled.

**B. Speedy trial**

Both the U.S. and Texas Constitutions as well as the Texas Code of Criminal Procedure guarantee a defendant a right to a speedy trial. *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 1.05; *Klopfer v. State of North Carolina*, 386 U.S. 213, 222–26 (1967); *State v. Lopez*, 631 S.W.3d 107, 113 (Tex. Crim. App. 2021); *Balderas v. State*, 517 S.W.3d 756, 767 (Tex. Crim. App. 2016). When a defendant claims that the right to a speedy trial has been violated, courts analyze and weigh four factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Lopez*, 631 S.W.3d at 113; *Balderas*, 517 S.W.3d at 767.

Courts must weigh the strength of each of the *Barker* factors and then balance their relative weights considering the State's and the defendant's conduct. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). The evidentiary burden differs depending on the *Barker* factor at stake. The State carries the burden to justify the length of the delay. *Id*. at 280. The defendant carries the burden to show the delay is "presumptively prejudicial" and to prove he or she asserted his right and suffered prejudice. *Lopez*, 631 S.W.3d at 113–14; *Cantu*, 253 S.W.3d at 280. In reviewing the trial court's analysis of the *Barker* factors, we apply a bifurcated standard of review. *Lopez*, 631 S.W.3d at 113–14; *Balderas*, 517 S.W.3d at 767–68. Factual components are reviewed under an abuse of discretion standard, but we review legal components de novo. *Lopez*, 631 S.W.3d at 113–14. Consequently, we defer to explicit or implicit findings if they are supported by the record and sustain the trial court's ruling. *Id*. at 114; *Balderas*, 517 S.W.3d at 767–68. Engaging in the *Barker* speedy-trial analysis on appeal requires us to assess each factor individually yet balance them holistically. *Lopez*, 631 S.W.3d at 114; *Balderas*, 517 S.W.3d at 768.

### (1) Length of delay

The length of the delay is significant because the longer a defendant must wait for trial, the more prejudicial the delay is. *Zamorano v. State*, 84 S.W.3d 643, 648–49 (Tex. Crim. App. 2002) (en banc). "Generally, a delay of eight months to a year, or longer, is presumptively prejudicial and triggers a speedy trial analysis." *Lopez*, 631 S.W.3d at 114.

"The first *Barker* factor, the length of the delay, is measured from the time the defendant is arrested or formally accused." *Dragoo v. State*, 96 S.W.3d 308, 313–14 (Tex. Crim. App. 2003). Since Appellant was not arrested prior to his indictment, the starting point for determining the length of the delay is January 10, 2022, the date of his indictment. Trial was held on February 17, 2023. The State does not dispute that this delay of just over 13 months is presumptively prejudicial.

### (2) Reason for delay

In balancing the factors, the court assigns different weights to the reasons for the delay:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531.

Appellant's arraignment was originally scheduled for February 1, 2022, but did not occur until July 19, 2022. Part of that delay is attributed to Appellant's health (an illness). The rest of the delay between arraignments is unexplained by the record.[5] *Dragoo*, 96 S.W.3d at 314 ("In the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay."). The State is also

---

[5] In its brief, the State asserts that aside from Appellant's illness, the delay was because of "his counsel's scheduling conflicts, and disagreements he had with his attorney." These reasons do not appear in the record.

accorded a reasonable period to prepare for trial. *See State v. Vasquez*, No. 08-16-00089-CR, 2018 WL 4178462, at *6 (Tex. App.—El Paso Aug. 31, 2018, no pet.) (not designated for publication) (six-month delay acceptable); *Rivero v. State*, No. 08-02-00191-CR, 2004 WL 42625, at *4 (Tex. App.—El Paso Jan. 8, 2004, no pet.) (not designated for publication) (agreeing that State is entitled to some time, but finding ten months was too long and would count against the State, but not heavily). Therefore, the first six months of the delay cannot be attributed to the State.

Appellant's trial was originally scheduled for August 15, 2022. But at the arraignment on July 19, 2022, less than a month before trial, at Appellant's insistence, the trial court discharged Appellant's attorney, appointed a new attorney to represent him, and reset the trial to November 28, 2022. The court also explained that because of the backlog caused by COVID-19, there were 144 cases on his docket and the rules required that he give priority to the oldest cases where the defendants were in jail. Since the change in attorneys was done at Appellant's request, it does not weigh against the State. *Holmes v. State*, 938 S.W.2d 488, 491 (Tex. App.—Texarkana 1996, no pet.) (delays from appointment of new counsel cannot be counted against the State). The additional delay caused by overcrowded courts weighs against the State but only slightly. *Barker*, 407 U.S. at 531; *Zamorano*, 84 S.W.3d at 649. And we are not blind to the effect of COVID-19 on court dockets. *State v. Elizondo*, No. 04-21-00489-CR, 2022 WL 3047103, at *3 (Tex. App.—San Antonio Aug. 3, 2022, no pet.) (mem. op., not designated for publication) ("However, courts that have considered the impact of the pandemic on speedy-trial rights have nearly all countenanced additional delays resulting from the pandemic.").

The trial was reset again to January 17, 2023. Between the time of the arraignment and this trial setting, the court also resolved a motion for a competency evaluation requested by Appellant's

8

attorney.[6] "[D]elays related to competency evaluations do not count against the State." *Lopez*, 631 S.W.3d at 112–13. At the next pretrial hearing, the court granted Appellant's request to proceed pro se and the trial was again reset—this time to February 6, 2023—so that Appellant could have a hearing on his pretrial motions that he could, at that point, urge pro se. Because this delay stemmed from Appellant's request, it is not weighed against the State. Finally, on January 10, 2023, Appellant waived the jury trial, so the case was taken off the jury trial docket and reset for the final time to February 17, 2023.

In sum, of all the reasons for the delay, only the delay caused by overcrowded courts can be weighed against the State, but only slightly. Most of the delay counts against Appellant.

**(3)  Appellant's assertion of the right**

Appellant was responsible for asserting his right to a speedy trial. *Cantu*, 253 S.W.3d at 282. The State argues that he never asserted his rights. We find that he did. Even while represented, when Appellant was allowed to address the Court, he stated that he demanded a speedy trial and stated he was ready to proceed. Once Appellant's request to represent himself was granted, he filed and urged motions for a speedy trial.

**(4)  Prejudice to the defendant**

An accused's right to a speedy trial is meant to protect three interests: "1) to prevent oppressive pretrial incarceration; 2) to minimize anxiety and concern of the accused; and 3) to limit the possibility that the defense will be impaired." *Zamorano*, 84 S.W.3d at 652 (citing *Barker*, 407 U.S. at 532). Whether a defendant is prejudiced by a delay is analyzed by how the delay affects these interests.

---

[6] The record before us does not include the evaluation, but the trial court noted that they waited for the results of the evaluation for several weeks and that the results had been filed.

A defendant has the burden of showing prejudice. *State v. Munoz*, 991 S.W.2d 818, 826 (Tex. Crim. App. 1999) (en banc). We agree that Appellant was prejudiced by the fact that he was incarcerated pending trial.[7] But Appellant did not present evidence of any other specific ways he was prejudiced and, most significantly, he made no allegations that his ability to present a defense was impaired by the delay. The prejudice from pretrial incarceration "is not sufficient alone to establish the right to dismissal." *Wade v. State*, No. 02-21-00125-CR, 2023 WL 2534468, at *10 (Tex. App.—Fort Worth Mar. 16, 2023, pet. ref'd) (mem. op., not designated for publication), *cert. denied*, 144 S. Ct. 292 (2023).

### (5) Balancing the factors

Our balance of the four *Barker* factors is de novo. *Balderas*, 517 S.W.3d at 768. That de novo review is guided by these cautionary comments from the Texas Court of Criminal Appeals:

> Because dismissal of the charges is a radical remedy, a wooden application of the Barker factors would infringe upon "the societal interest in trying people accused of crime, rather than granting them immunization because of legal error." Thus, courts must apply the Barker balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed. The constitutional right is that of a speedy trial, not dismissal of the charges.

*Cantu*, 253 S.W.3d at 281 (quoting *United States v. Ewell*, 383 U.S. 116, 121 (1966) (footnotes omitted)).

The length of the delay, Appellant's assertion of his rights, and the fact that he was incarcerated pending trial all weigh in his favor. Even so, because all the reasons for the delay except for overcrowded courts can be ascribed to Appellant or to neither party, and because Appellant made no showing of specific prejudices or harm from the delay besides pretrial

---

[7] His requests for a bond reduction were denied.

incarceration, we hold that Appellant's right to a speedy trial was not violated by the approximately 13-month delay between his indictment and trial.

Appellant's second issue is overruled.

### C. Court costs

After trial, a bill of costs was filed showing court costs and fees in the amount of $315. The judgment orders Appellant, "[u]pon release from confinement, . . . to proceed without unnecessary delay to the District Clerk's office . . . to pay or make arrangements to pay any fines, court costs, reimbursement fees, and restitution due." Appellant argues that the judgment is void because the trial court violated his due process rights by not making an on-the-record inquiry into his ability to pay.

The Code of Criminal Procedure requires the trial court to inquire about a defendant's ability to pay before making orders regarding the payment of costs: "[D]uring or immediately after imposing a sentence in a case in which the defendant entered a plea in open court . . . a court shall inquire on the record whether the defendant has sufficient resources or income to immediately pay all or part of the fines or costs." Tex. Code Crim. Proc. Ann. art. 42.15(a-1). If the court makes a finding of inability to pay, the court has the discretion to allow costs to be paid later or "at designated intervals," to be "discharged by performing community service," to be waived, or a combination of any of these options. *Id*. at 42.15(a–1)(1)–(4).

The Texas Court of Criminal Appeals recently addressed this issue in *Cruz v. State*, 698 S.W. 3d 265 (Tex. Crim. App. 2024). It held that the "Article 42.15(a-1) inquiry is not fundamental to the adjudicatory process, so it is forfeitable." *Id.* at 271. To preserve the right, a defendant must object to the trial court's failure to conduct the hearing. *Id*. at 271. As in *Cruz*, Appellant did not object to the trial court's failure to hold the hearing and has therefore forfeited

11

his right to a hearing.[8]

Appellant also argues that the trial court had a duty to conduct a hearing to determine whether the costs are an undue hardship under Article 43.035(a). Unlike the inquiry under Article 42.15, the court does not have a *sua sponte* duty to make this inquiry right after sentencing. Instead, the court has continuing jurisdiction to hold such a hearing when a defendant notifies the court that he is having trouble making payments. Tex. Code Crim. Proc. Ann. art. 43.035(b), (e). The *Cruz* Court recognized that failing to hold an inability to pay hearing after sentencing "would not doom a defendant to undue hardship" because "[t]he same relief from fine and costs offered by Article 42.15(a–1)(1)– (4)—delayed or periodic payments, community service, and/or fine-and-costs waiver—is available forever after sentencing." *Cruz*, 698 S.W. 3d 269. Upon his release, if Appellant is unable to pay the fines and court costs, he can seek relief from the trial court at that time. *See Sloan v. State*, 676 S.W.3d 240, 242 n.2 (Tex. App.—Tyler 2023, no pet.). If a defendant notifies the court that he has difficulty paying fines and costs in compliance with the judgment, "the court shall hold a hearing to determine whether that portion of the judgment imposes an undue hardship on the defendant." Tex. Code Crim. Proc. Ann. art. 43.035(a). "If the court determines at the hearing under Subsection (a) that the portion of the judgment regarding fines and costs imposes an undue hardship on the defendant, the court shall consider whether the fine and costs should be satisfied through one or

---

[8] Additionally, the point of the Article 42.15 inquiry is to determine if a defendant can "immediately" pay. Tex. Code Crim. Proc. Ann. art. 42.15(a–1). Even though the trial court did not make the inquiry on the record, it implicitly found that Appellant did not have sufficient funds to immediately pay and instead ordered an option provided to it by Article 42.15—to arrange to make payments after Appellant is released.

more methods listed under Article 42.15(a–1)." *Id.* art. 43.035(c). The trial court retains jurisdiction for the purposes of making such a determination. *See id*. art. 43.035(e).

The defendant has not made that request of the trial court and his eligibility for any relief because of an undue hardship is not before us.

We overrule Appellant's third issue.

## III. CONCLUSION

Having overruled all of Appellant's issues, the trial court's judgment is affirmed.


JEFF ALLEY, Chief Justice

December 2, 2024

Before Alley, C.J., Palafox and Soto, JJ.

(Do Not Publish)

13